AO 106 (Rev. 04/10)  Application for a Search Warrant (Modified: WAWD 2-12-2020)

# UNITED STATES DISTRICT COURT

for the

## Western District of Washington

| | | | |
|---|---|---|---|
| In the Matter of the Search of | ) | | |
| | ) | | |
| Information associated with 6 Target | ) | Case No. | MJ22-134 |
| Accounts/Identifiers, for Investigation of 8 | ) | | |
| U.S.C. § 1324 and Other Offenses | ) | | |

### APPLICATION FOR A SEARCH WARRANT AND PEN-TRAP ORDER

I, David Spitzer, a federal law enforcement officer or an attorney for the government, request a search warrant and pen-trap order, and state under penalty of perjury that I have reason to believe that on the person or property described in Attachments A1-A2, located in the Western District of Washington there is now concealed property and evidence described in Attachments B1-B2.  This Court has authority to issue this warrant under 18 U.S.C. §§ 2703(c)(1)(A) and 2711(3)(A) and Federal Rule of Criminal Procedure 41.

The basis for the search under Fed. R. Crip P. 41(c) is *(check one or more)*:

☒ evidence of a crime;

☒ contraband, fruits of crime, or other items illegally possessed;

☒ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| *Code Section* | *Offense Description* |
|---|---|
| 8 U.S.C. §§ 1324(a)(1)(A)(i) and (a)(2)(B)(ii); | Alien Smuggling; Laundering of, and |
| 18 U.S.C. §§ 1956(a)(1), and (h) | Conspiracy to Launder, Monetary Instruments |

The application is based on the facts set forth in the attached affidavit of SA David Spitzer, which is incorporated herein by reference with all attachments and exhibits.  Pursuant to 18 U.S.C. § 3123(a)(1), Exhibit 1 to the affidavit includes a certification from an attorney from the government that the requested information is relevant to an ongoing criminal investigation.

Pursuant to Fed. R. Crim. P. 41, this warrant is presented by:

☒ by reliable electronic means; or ☐ telephonically recorded

_____
*Applicant's signature*

David Spitzer, Special Agent, HSI
*Printed name and title*

☐ The foregoing affidavit was sworn before me and signed in my presence, or

☒ The above-named officer provided a sworn statement attesting to the truth or the foregoing affidavit by telephone.

Date:  April 6, 2022

_____
*Judge's signature*

Paula L. McCandlis, United States Magistrate Judge
*Printed name and title*

City and state:  Seattle, Washington

USAO # 2018R00962

## AFFIDAVIT IN SUPPORT OF AN APPLICATION FOR A SEARCH WARRANT AND PEN-TRAP ORDER

STATE OF WASHINGTON        )
                           )        ss
COUNTY OF KING             )

I, David Spitzer being first duly sworn, hereby depose and state as follows:

## INTRODUCTION

1.      I make this affidavit in support of an application for search warrants under Federal Rule of Criminal Procedure 41 and 18 U.S.C. §§ 2703(c)(1)(A) for information about the location of the following cellular telephone(s) (hereinafter, the "**Target Telephone(s)**"):

a.      (916) 616-2319 (hereinafter "**Target Telephone 1**" or "**TT1**"). **TT1** is a cellular telephone with International Mobile Subscriber Identity (IMSI) 311480380560254, with subscriber "Info Update," at 295 Parkshore Drive, Folsom, CA, with service provided by Verizon, a wireless telephone service provider headquartered at 180 Washington Valley Road, Bedminster, NJ 07921. **TT1** is described herein and in Attachment A1, and the location information to be seized is described herein and in Attachment B1.

b.      (360) 303-0806 (hereinafter "**Target Telephone 2**" or "**TT2**"). **TT2** is a cellular telephone with International Mobile Subscriber Identity (IMSI) 311480414153925, with subscriber "PHONEINTHEBOX OAS," at 295 Parkshore Drive, Folsom, CA with service provided by Verizon, a wireless telephone service provider headquartered at 180 Washington Valley Road, Bedminster, NJ 07921. **TT2** is described herein and in Attachment A1, and the location information to be seized is described herein and in Attachment B1.

c.      (916) 513-3602 (hereinafter "**Target Telephone 3**" or "**TT3**"). **TT3** is a cellular telephone with International Mobile Subscriber Identity (IMSI) 310410162223277, with subscriber "PREPAID CUSTOMER," at 17330 Preston Road in

AFFIDAVIT OF SA DAVID SPITZER - 1
USAO 2018R00962

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

Dallas, TX, with service provided by AT&T, a wireless telephone service provider headquartered at 11760 U.S. Highway 1, North Palm Beach, FL 33408. **TT3** is described herein and in Attachment A2, and the location information to be seized is described herein and in Attachment B2.

        d.    (253) 750-1721 (hereinafter "**Target Telephone 4**" or "**TT4**"). **TT4** is a cellular telephone with International Mobile Subscriber Identity (IMSI) 310410206907647, with subscriber "PREPAID CUSTOMER," at 123 Your Street, Your Town, GA 98022, with service provided by AT&T, a wireless telephone service provider headquartered at 11760 U.S. Highway 1, North Palm Beach, FL 33408. **TT4** is described herein and in Attachment A2, and the location information to be seized is described herein and in Attachment B2.

        e.    (628) 224-5202 (hereinafter "**Target Telephone 5**" or "**TT5**"). **TT5** is a cellular telephone with International Mobile Subscriber Identity (IMSI) 310410182036323, with subscriber "PREPAID CUSTOMER," at 123 Your Street, Your Town, GA 94131, with service provided by AT&T, a wireless telephone service provider headquartered at 11760 U.S. Highway 1, North Palm Beach, FL 33408. **TT5** is described herein and in Attachment A2, and the location information to be seized is described herein and in Attachment B2

        f.    (253) 298-2097 (hereinafter "**Target Telephone 6**" or "**TT6**"). **TT6** is a cellular telephone with International Mobile Subscriber Identity (IMSI) 310280034815193, with subscriber "PREPAID CUSTOMER," at 123 Your Street, Your Town, GA 98409, with service provided by AT&T, a wireless telephone service provider headquartered at 11760 U.S. Highway 1, North Palm Beach, FL 33408. **TT6** is described herein and in Attachment A2, and the location information to be seized is described herein and in Attachment B2.

<u>ECPA</u>

    2.    The Court has jurisdiction to issue the proposed warrants under the Electronic Communications Privacy Act (ECPA), 18 U.S.C. §§ 2701-2713, because it is a

AFFIDAVIT OF SA DAVID SPITZER - 2
USAO 2018R00962

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

"court of competent jurisdiction" as defined in 18 U.S.C. § 2711. Specifically, the Court is the Western District of Washington, a district court of the United States that has jurisdiction over the offense being investigated, *see* 18 U.S.C. § 2711(3)(A)(i).

Pen Register Act

3.    Because this warrant seeks the prospective collection of information that falls within the statutory definitions of information collected by a "pen register" and/or "trap and trace device," *see* 18 U.S.C. § 3127(3) & (4), the requested warrants are designed to comply with the Pen Register Act, 18 U.S.C. §§ 3121-3127.

4.    The Court has jurisdiction to issue the requested pen-trap orders because it is a "court of competent jurisdiction" under 18 U.S.C. § 3122(a)(2). Specifically, the Court is a district court of the United States that "has jurisdiction over the offense being investigated." 18 U.S.C. § 3127(2)(A)(i).

5.    This application includes all the information required by the Pen Register Act. *See* 18 U.S.C. §§ 3122(b) & 3123(a)(1). Namely, Exhibit 1 to this application is a certification from Assistant United States Attorney Joseph C. Silvio that (1) identifies the Drug Enforcement Administration as the law enforcement agency conducting the investigation and (2) certifies the information likely to be obtained is relevant to an ongoing criminal investigation being conducted by that agency. 18 U.S.C. § 3122(b). The Assistant United States Attorney is an "attorney for the government" as defined in Rule 1(b)(1) of the Federal Rules of Criminal Procedure.

6.    A "pen register" is "a device or process which records or decodes dialing, routing, addressing, or signaling information transmitted by an instrument or facility from which a wire or electronic communication is transmitted." 18 U.S.C. § 3127(3). A "trap and trace device" is "a device or process which captures the incoming electronic or other impulses which identify the originating number or other dialing, routing, addressing, and signaling information reasonably likely to identify the source of a wire or electronic communication." 18 U.S.C. § 3127(4).

AFFIDAVIT OF SA DAVID SPITZER - 3
USAO 2018R00962

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

7.     In the traditional telephone context, pen registers captured the destination phone numbers of outgoing calls, while trap and trace devices captured the phone numbers of incoming calls. Similar principles apply to other kinds of wire and electronic communications such as emails, text messages, connection logs, and data transfers. The prospective location data sought in this application constitutes "dialing, routing, addressing, and signaling information" covered by the Pen Register Act. Accordingly, the requested warrants will record, decode, and/or capture dialing, routing, addressing, and signaling information associated with the **Target Telephone(s)** without geographic limit.

8.     The United States further requests, pursuant to 18 U.S.C. §§ 3123(b)(2) and 3124(a)-(b), that the Court order, through Attachments B1-B2 of the requested warrants that AT&T, Verizon, and any other person or entity providing wire or electronic communication service in the United States whose assistance may facilitate execution of this warrant furnish, upon service of the warrant, information, facilities, and technical assistance necessary to install the pen/trap, including installation and operation of the pen-trap unobtrusively and with minimum disruption of normal service. Any entity providing such assistance shall be reasonably compensated by the Drug Enforcement Administration, pursuant to 18 U.S.C. § 3124(c), for reasonable expenses incurred in providing facilities and assistance in furtherance of the warrant.

9.     This is the third application in this judicial district for a search warrant authorizing disclosure of the above information for **Target Telephone 1**. This is the fourth application in this judicial district for a search warrant authorizing disclosure of the above information for **Target Telephone 2**. This is the first application in this judicial district for a search warrant authorizing disclosure of the above information for **Target Telephones 3-6** in connection with this investigation.

10.     **Through this application, the United States does not request and does not seek to obtain the contents of any communications, as defined in 18 U.S.C. § 2510(8).**

**AGENT BACKGROUND**

11.     I am a Special Agent with United States Homeland Security Investigations (HSI) and have been so employed since January 2020. In February 2021, I graduated from the Criminal Investigator Training Program and the Homeland Security Investigations Special Agent Training Program at the Federal Law Enforcement Training Centers (FLETC) in Glynco, Georgia. While at FLETC, I received nearly 1000 hours of training in such areas including, but not limited to criminal law, human smuggling/trafficking investigations, and criminal procedures. Prior to being employed with HSI, I was employed as an agent with the United States Border Patrol (USBP) for eleven years and was assigned to the Sector Intelligence Units in El Centro, CA, and Blaine, WA. In this capacity, I was responsible for conducting criminal investigations regarding the violation of immigration laws of the United States. In 2009, I graduated from the United States Border Patrol Academy at the FLETC in Artesia, New Mexico. My education includes a Bachelor of Arts degree in Political Science and a Bachelor of Arts degree in Criminology from the University of Florida.

12.     I am assigned to HSI's National Security and Public Safety group in Blaine, WA (hereinafter "HSI Blaine"), which focuses on the enforcement of immigration laws (Title 8, United States Code), including human trafficking and human smuggling, as well as the investigation of transnational gangs. I am authorized to investigate and enforce violations of federal criminal statutes, including those in Titles 8, 18, and 21 of the United States Code.

13.     The information in this affidavit is based upon, among other things, the investigation that I have conducted in this case, my training and experience, information from other agents and witnesses, my conversations with other law enforcement officers who have engaged in various aspects of this investigation, and my review of reports written by other law enforcement officers involved in this investigation. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and pen-trap, and therefore does not set forth all of my knowledge about this matter.

AFFIDAVIT OF SA DAVID SPITZER - 5
USAO 2018R00962

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

When the statements of others are set forth in this affidavit, they are set forth in substance and in part.

14.     Based on the facts set forth in this affidavit, there is probable cause to believe that violations of 8 U.S.C. §§ 1324(a)(1)(A)(i) and (a)(2)(B)(ii), Alien Smuggling,[1] and 18 U.S.C. §§ 1956(a)(1), and (h), Laundering of, and Conspiracy to Launder, Monetary Instruments (hereinafter referred to collectively as "Target Offenses"), have been committed, are being committed, and will be committed by Rajinder Pal SINGH, aka Jaspal GILL,[2] and other known and unknown.  There is also probable cause to believe that the location information described in Attachments B1-B2 will constitute evidence of these criminal violations and will lead to the identification of individuals who are engaged in the commission of these offenses.

## BACKGROUND ON UNDOCUMENTED NONCITIZEN SMUGGLING ORGANIZATIONS

15.     I know from training and experience that 8 U.S.C. § 1324(a)(1)(A)(i) makes it illegal to bring, or attempt to bring, an undocumented noncitizen to the United States in any matter whatsoever other than at a designated port of entry or a place other than as designated by the Secretary of the Department of Homeland Security. I also know that this section applies regardless of whether an undocumented noncitizen has received prior official authorization to come to, enter, or reside in the United States.

16.     In addition, 8 U.S.C. § 1324(a)(2)(B)(ii) makes it illegal to knowingly or in reckless disregard of the fact that an undocumented noncitizen has not received prior official authorization to come to, enter, or reside in the United States, bring or attempt to

---

[1] The word "alien" is used in Title 8 of the United States Code. Throughout this affidavit, and consistent with Executive Branch policy, when referencing offenses as defined in Title 8 of the United States Code, the author uses the term "alien," when not referring specifically to Tile 8 of the United States Code, the term "noncitizen" is used in lieu of the term "alien."

[2] To avoid confusion due to other individuals listed in this affidavit with the last name SINGH, in this affidavit, Rajinder Pal SINGH—the main target of this investigation—will be referred to by his alias Jaspal GILL.

AFFIDAVIT OF SA DAVID SPITZER - 6
USAO 2018R00962

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

bring to the United States whatsoever, such undocumented noncitizen for private financial gain.

17.     Further, 8 U.S.C. § 1324(a)(1)(A)(v)(II) makes it unlawful to aid or abet the commission of the crimes listed in § 1324(a)(1)(A). And 18 U.S.C. § 2 prohibits aiding or abetting the commission of any offense against the United States.

18.     From my training and experience as an HSI Special Agent, I know that undocumented noncitizens who cannot secure non-immigrant or immigrant visas to lawfully enter the United States generally choose instead to enter the United States illegally[3] between the ports of entry on the southern and northern borders.

19.     Because of their general unfamiliarity with the terrain and border environment or with the methods and routes used to successfully cross the border without detection by government officials, undocumented noncitizens seeking to enter the United States without inspection frequently hire individuals, known as smugglers, who have experience bringing individuals into the United States without detection.

20.     Several undocumented noncitizen smuggling organizations operate in the lower mainland of British Columbia, Canada. These organizations typically charge undocumented noncitizens between $2,000 and $5,000 (USD) to be illegally brought across the U.S. border. Fees charged by these organizations vary on different factors. This can include if an undocumented noncitizen is housed by the organization during their illegal border crossing, or if the organization transports the undocumented noncitizen a significant distance during the illegal entry. The relative risk of the route used to enter the U.S. is also a factor that can affect the fee.

21.     Undocumented noncitizen smuggling organizations operating in the lower mainland of British Columbia typically have U.S. associates who pick up the undocumented noncitizens once they cross the border illegally. These U.S. associates typically transport the undocumented noncitizens to the Seattle area, where associates may

---

[3] As used here, and throughout this affidavit, an illegal entry into the United States means an entry at a place not designated as a port of entry and without required immigration documents.

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1   then assist the undocumented noncitizens with travel arrangements to other U.S. locations.

2   These undocumented noncitizen smuggling organizations may assist in facilitating a driver

3   to transport undocumented noncitizens to other states, as many illegal entrants lack the

4   identification required to travel by air or other mass transportation.

5       22.     Many of these undocumented noncitizen smuggling organizations work with

6   individuals known as "brokers", who arrange travel for the undocumented noncitizens from

7   their home countries through various transit nations into the U.S. for fees ranging from

8   $30,000 to $70,000 (USD). These brokers will often also arrange for fraudulent travel and

9   identification documents to facilitate the undocumented noncitizen's travel.

## THE INVESTIGATION

### A.   Identification of Smuggling Organization and Target of Investigation Rajinder Pal SINGH, aka Jaspal GILL

13      23.     In 2018, Homeland Security Investigations (HSI) Sacramento received

14  information from Amtrak Investigations regarding suspicious activity related to an Amtrak

15  member profile that was set up using the email account, singhmola7@gmail.com

16  (hereinafter referred to as "Amtrak Account"). HSI learned that user behind that Amtrak

17  Account had spent more than $90,000 to purchase tickets for groups of Indian nationals

18  traveling mostly from Washington State to Naperville, IL, a suburb of Chicago. These

19  tickets were purchased using billing names that included Jaypaul SINGH and Jaspal GILL

20  with multiple billing addresses, including 11810 127th Street East in Puyallup, WA.

21      24.     As indicated above, Jaspal GILL is a known alias of Rajinder Pal SINGH. A

22  search of Washington state records revealed a driver license in the name of Jaspal GILL

23  (GILL*J*227LE) and an address of 11810 127th Street Ct E in Puyallup, WA. This license

24  was first issued on April 27, 2012, reissued on November 21, 2015, but according to

25  Washington State records was subsequently cancelled. The two driver's license photos

26  associated with this driver's license appear to be a match to GILL—based both on other

27  photographs that I have viewed of GILL and physical surveillance that I have conducted

28  of GILL.

AFFIDAVIT OF SA DAVID SPITZER - 8
USAO 2018R00962

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

25.     Another name associated with the Amtrak Account was Daljit KAUR, with a corresponding billing address of 9989 Springview Way, Elk Grove, CA. Based upon reports authored by other law enforcement officers relating to this case, I know that this is a name and address match to the common law[4] spouse of GILL.

26.     On January 17, 2018, Amtrak investigators notified U.S. Immigration and Customs Enforcement (ICE) and the Naperville Police Department of a train that was set to arrive that day in Naperville, IL, with many passengers whose tickets had been booked by the Amtrak Account. Upon arriving, a group of approximately ten individuals, who appeared to be on Indian descent, were observed disembarking from the train. These individuals were traveling with either no personal belongings or, at most, a backpack.

27.     After the group split up, a Naperville Police Department officer initiated a traffic stop on a vehicle in which one of the suspected undocumented noncitizens was an occupant. The passenger, a female named V.P., refused to answer questions of officers related to her immigration status and was later released from the scene. Further record checks were conducted by HSI SA Dylan Critten that revealed that V.P. was previously refused a United States visitor visa and there was no record of her having been lawfully admitted into the United States.

28.     According to Amtrak records, the bookings associated to the Amtrak Account used Internet Protocol (IP) address 73.221.131.24, as well as other IP addresses. On February 9, 2018, SA Critten served Comcast Communications with an administrative subpoena for records pertaining to IP address 73.221.131.24.

29.     On February 20, 2018, Comcast responded to the subpoena. According to the records provided, between January 1, 2018, and February 9, 2018, the subscriber of record

---

[4] I use this term because I am not certain that GILL and KAUR are in fact married, under either Indian or U.S. law. However, based upon my investigation in this case, to include law enforcement reports from 2003 and 2008, I know that GILL and KAUR are the parents of at least two children and have shared the same household.

1  for the requested IP address was Jaspaul GILL with a service address of 623 Eastside St.
2  SE, Apt. 404, Olympia, WA.

3      30.    On March 26, 2018, a public-records search by SA Critten for the address
4  located at 623 Eastside St. SE, Apt. 404 in Olympia, WA, returned results for both "Jaypaul
5  SINGH" and "Jaspaul GILL."

6      31.    While conducting a criminal record search on GILL, it was determined that
7  on August 1, 2003, in the District of Oregon, GILL was convicted of 18 U.S.C. § 1540
8  (False Statements in Application for U.S. Passport) and 18 U.S.C. § 1344 (Bank Fraud),
9  sentenced to twenty-one months in prison, and ordered to pay restitution of more than
10 $290,000. On July 13, 2009, in the Western District of Washington, GILL was convicted
11 of 8 U.S.C. § 1326(b)(2) (Illegal Reentry After Deportation) and 18 U.S.C. § 1344 (Bank
12 Fraud), sentenced to twenty-seven months in prison, and ordered to pay restitution of
13 approximately $15,000. On January 3, 2011, following service of his sentence on the above
14 charges, GILL was deported from the United States and returned to India.

15     32.    According to records provided to law enforcement by Chase, a checking
16 account in the name of Jaspal GILL, with an address of 11810 127th Street Ct E, Puyallup,
17 WA, was opened in Federal Way, WA, on January 4, 2012.

18     33.    On September 18, 2018, an Amtrak representative confirmed to SA Critten
19 that there had been no more reservations purchased using the singhmola7@gmail.com
20 email address after January 16, 2018.

21     34.    On April 4, 2019, through a search of the Thurston County Assessors
22 website, HSI SA Jason Montgomery identified the purchase of a residence in the name of
23 Daljit KAUR, *i.e.*, the name of the common law spouse of GILL, at 2743 Fiddleback St.
24 NE, Lacey, WA (hereinafter the "Lacey Residence"). Additionally, based upon additional
25 open-source checks, SA Montgomery found a utility record under the name Jaspaul GILL
26 for the Lacey Residence. The phone number listed on that utility record was (916) 616-
27 2319, *i.e.*, the call number associated with **TT1**.

28

AFFIDAVIT OF SA DAVID SPITZER - 10
USAO 2018R00962

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

35.     According to records provided by Verizon on January 27, 2022, **TT1** is a prepaid account with a subscriber listed as "Info Update" and an address of 295 Parkshore Drive, Folsom, CA. An open-source search of that address reveals that it is a Verizon office building. The subpoenaed information also revealed that **TT1** has been active with the same subscriber since January 28, 2018.

**B.     Identification of Smuggling Organization's Use of Uber to Transport Undocumented Noncitizens from U.S. – Canada Border**

36.     In July 2018, independent of the above-noted HSI Sacramento investigation relating to purchase of train fares by the Amtrak Account, HSI Blaine initiated an investigation into the increased apprehensions by USBP of foreign nationals crossing illegally into the United States from Canada between the designated ports of entry in Whatcom County, WA.

37.     Information obtained through the investigation indicates that beginning no later than Summer 2018, GILL and the smuggling organization began using Uber drivers to transport undocumented noncitizens from the U.S. – Canada border to various locations in the greater Seattle area.

38.     On October 4, 2018, Border Patrol agents observed a dark gray[5] 2015 Toyota Camry with Washington license plate BGB5468 (hereinafter "the Camry") pick up four individuals who had crossed into the United States illegally near Lynden, WA.

39.     Border Patrol agents stopped the Camry and interviewed the driver, Ramandeep Singh Johal. Johal stated that he was an Uber driver and said that he was at home when he received an alert on his Uber application for a fare. Johal told Border Patrol agents that this was the first time he had picked up a fare that close to the border. Johal said that after the Border Patrol stopped the Camry, the man in the Camry's passenger seat told Johal that the group had crossed the border illegally.

---

[5] Prior warrant applications described this vehicle as black, but upon further visual surveillance, its color is more appropriately described as dark gray.

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

40.     U.S. Border Patrol agents also interviewed the four passengers inside the Camry, and determined these individuals were Indian citizens and did not have the required immigration documents to be in the United States legally.

41.     Uber records, received in October 2018, show that Johal and the Camry made more than a dozen early-morning trips from addresses in Lynden and Nooksack, WA, to Seattle-Tacoma International Airport (hereinafter "Sea-Tac Airport") between late September 2018 and early December 2018. These trips occurred between 1:53 a.m. and 5:23 a.m.

42.     On November 16, 2018, U.S. Magistrate Judge Paula L. McCandlis authorized the government to install a GPS tracking device on the Camry. GJ18-603 (W.D. Wash. Nov. 16, 2018). Agents installed a tracker on the Camry on November 19, 2018.

43.     On December 3, 2018, at 2:05 a.m., HSI Blaine conducted electronic surveillance of the Camry as it left 1861 Emerald Lane, Lynden, WA. According to the court-authorized GPS tracker, at 2:10 a.m., the Camry stopped briefly on Berthusen Road in Lynden, WA, approximately four miles south of the U.S. – Canada border. HSI Blaine continued electronic surveillance of the Camry as it traveled directly to Sea-Tac Airport, roughly 115 miles from Lynden.

44.     Once the Camry arrived at the airport, Supervisory Special Agent (SSA) Loic Gunn observed four occupants—two men of apparent Indian descent, one woman of apparent Indian descent, and a young child—get out of the vehicle near the American Airlines departure drop-off area.

45.     SSA Gunn maintained surveillance on foot as these four individuals left the drop-off area and walked downstairs to the arrival's concourse. The individuals then walked away from the airport to Pacific Highway South.

46.     SA Brian Faria then observed these four individuals cross Pacific Highway South to the parking lot of the Radisson Hotel Seattle Airport (hereinafter "Radisson Sea-Tac"), where they were picked up by a silver 2017 Toyota Prius bearing Washington license plate number BFG8375 (hereinafter "the Prius"), registered to Ajeet Singh, at

11221 SE 240th Place, Kent, WA[6] (hereinafter "the Kent Residence"). Based on subsequent physical surveillance and a review of identity documents, law enforcement believes that the driver of the Prius was in fact Ajeet Singh.

47.     HSI Blaine and Seattle agents continued surveillance of the Prius as it drove to the Econo Lodge hotel at 1233 Central Ave., Kent, WA, arriving at 4:36 a.m. Once at the Econo Lodge, the occupants of the Prius, including Singh, entered Room 108. Five minutes later, Singh left Room 108 by himself and departed the hotel in the Prius.

48.     Singh returned to the hotel in the Prius around noon. Agents watched him enter Room 108 with a small plastic grocery bag. Five minutes later, Singh left the room and entered the hotel lobby. Singh returned to Room 108 before departing in the Prius at 12:15 p.m.

49.     At 10:18 p.m., agents observed Singh return to the hotel in the Prius. A few minutes later, the four occupants—two men, a woman, and a child—left the room and got into the Prius. Singh parked near the lobby and went inside for several minutes before exiting the lobby with papers in his hand. Singh reentered the Prius and drove the passengers to the Kent Residence without stopping. Agents saw the Prius enter the residence's attached garage.

50.     A review of records provided by Uber, shows that the Malik Sen was the Uber customer who ordered the December 3, 2018, Uber trip detailed above. A further analysis of records provided by Uber show that from September 28, 2018, through December 31, 2018, the Malik Sen Uber Account booked twenty-four additional trips from Lynden and Nooksack, WA, to Sea-Tac Airport. Significantly, the last trip on December 31, 2018, with a pick-up in Lynden, WA, and a planned destination of Sea-Tac Airport, resulted in the apprehension of five undocumented citizens by USBP in Bellingham, WA.

---

[6] Based on surveillance and information gathered throughout this investigation, investigators believe this address used to be a stash house for undocumented noncitizens who were smuggled into the United States prior to being transported by the smuggling organization to various locations throughout the United States. However, since early 2020, the investigation has revealed that the organization no longer uses this location.

AFFIDAVIT OF SA DAVID SPITZER - 13
USAO 2018R00962

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

**C.** **Identification of Straw Uber Accounts and Uber Trip-Splitting as Means of Obfuscating Trip Origin**

51. Throughout the course of this investigation, HSI has identified at least sixteen Uber accounts used by the smuggling organization. Through various legal processes, Uber has provided phone numbers associated with each of these Uber accounts. HSI has been able to determine, through subpoena requests to various service providers, that the phone number associated with each of these sixteen Uber accounts has service via a prepaid wireless account. Based on my training and experience, I know that use of prepaid wireless cellular accounts is a common tactic used by criminals who are attempting to evade law enforcement detection, as these accounts typically would not require verifiable subscriber/account holder information such as name and/or address.[7]

52. Though investigators have identified sixteen Uber accounts that are believed to have been used by the organization since the inception of the investigation in 2018, according to records provided by Uber on March 4, 2022, investigators believe that many of these accounts are no longer in use by the organization. However, at least three of these Uber accounts are currently active.[8] These three accounts are:

| Uber Account Name | Phone Number Associated with Account |
|---|---|
| Sam Thakur / Uber Account 1 | 916-616-2319 / **TT1** |
| Dave Maer / Uber Account 2 | 360-303-0806 / **TT2** |
| Dhiren Paras / Uber Account 3 | 916-513-3602 / **TT3** |

**Sam Thakur / TT1 Uber Account**

---

[7] Based on my training and experience, I know that use of prepaid wireless cellular accounts is a common tactic used by criminals who are attempting to evade law enforcement detection, as these accounts typically would not require verifiable subscriber/account holder information such as name and/or address.

[8] Based upon patterns observed over a three-year period, investigators anticipate that the organization may reuse Uber accounts previously involved in the smuggling of undocumented noncitizens, even when the organization had stopped using that account for an extended period.

53.     According to records provided by Uber on March 4, 2022, an account with the user-name Sam Thakur (Uber Account 1)[9] was created on February 4, 2018, and was active as of the date that Uber provided the records. The billing information was listed as "gift card." The e-mail address listed on the account was thakurpur360@gmail.com.

54.     As detailed below, a review of Uber Account 1, with **TT1** as the listed telephone number, suggests that Uber Account 1 has been used in conjunction with other Uber Accounts to move suspected undocumented noncitizens from near the U.S. – Canada border to Sea-Tac Airport, and then to the Kent residence, the Lacey Residence, and other areas known and unknown.

55.     While Uber Account 1 has never been used to order an Uber trip originating near the U.S. – Canada border, it has been used repeatedly as a second leg of an Uber trip that originated near the U.S. – Canada border. Specifically, from September 16, 2018, to May 29, 2021, at least ninety of the 140 Uber trips ordered by Uber Account 1 originated at, or near, Sea-Tac Airport, and were ordered within thirty minutes of the termination of another Uber Trip—ordered by a different Uber account—that ended at, or near, Sea-Tac Airport. As noted, each of these apparent first legs of a split-trip originated near the U.S. – Canada border.

---

[9] In April 2020, Uber provided internet protocol (IP) addresses relating to four Uber accounts, including Uber Account 1. One of the IP addresses provided, relating to Uber Account 1, was 73.83.98.37 (hereinafter "IP Address 1"). According to these records, IP Address 1 registered with Uber servers twenty-two times from January 9, 2020 (UTC), through February 11, 2020 (UTC). According to Comcast records, during these dates, IP Address 1 was associated with service at the Lacey Residence, with GILL as the subscriber.

Another IP address associated with Uber Account 1 was 98.255.185.2 (hereinafter "IP Address 2"). According to Uber records, IP Address 2 registered with Uber servers 324 times from January 2, 2020 (UTC), through March 31, 2020 (UTC). According to Comcast records, during these dates, IP Address 2 was associated with service at 10074 Dona Neely Way in Elk Grove, CA, with Daljit KAUR as the subscriber.

In September 2021, Uber provided additional records relating to IP addresses associated with Uber Account 1. According to these records, IP Address 1 again registered with Uber servers on September 8, 2021 (UTC). According to Comcast records received, on September 8, 2021, IP Address 1 was still associated with service at the Lacey Residence, with GILL as the subscriber.

56.     The below chart showing trip-splitting[10] at Sea-Tac Airport—with the Sam Thakur/Uber Account 1 always being the second leg—is representative of these ninety trips involving the two separate Uber accounts with trip-splitting at Sea-Tac Airport. Moreover, since January 27, 2020, when Uber Account 1 has been used in conjunction with another Uber account to split a trip at or near Sea-Tac Airport, the first leg of the trip was always ordered by either the Dave Maer Account / Uber Account 2, which is associated with **TT2**, or the Dhiren Paras Account / Uber Account 3, which is associated with **TT3**.

|  | Date | Departure | Origination | Arrival | Destination | Uber Account |
|---|---|---|---|---|---|---|
| Leg 1 | 9/16/2018 | 4:36 a.m. | Lynden, WA | 6:36 a.m. | Sea-Tac Airport | Nile Bijj |
| Leg 2 | 9/16/2018 | 6:57 a.m. | Radisson Sea-Tac | 7:15 a.m. | 9620 S. 242nd Ct., Kent, WA[11] | Sam Thakur/**TT1** |
| Leg 1 | 1/31/2019 | 4:32 a.m. | Nooksack, WA | 6:34 a.m. | Sea-Tac Airport | Dev Sumer |
| Leg 2 | 1/31/2019 | 6:50 a.m. | Radisson Sea-Tac | 7:14 a.m. | 11222 SE 240th Pl., Kent, WA[12] | Sam Thakur/**TT1** |
| Leg 1 | 6/24/2019 | 4:37 a.m. | Nooksack, WA | 6:51 a.m. | Sea-Tac Airport | Sin Suri |

---

[10] Based on records provided by Uber, law enforcement's knowledge of this investigation, and the patterns identified herein, investigators believe that members of the organization are splitting trips to obscure the origin of the trip, *i.e.*, the international border, and to provide a potential lack of knowledge defense relating to the immigration status and/or manner of entry of the noncitizens that the organization is smuggling.

[11] This address is located approximately 1.2 miles from the Kent Residence discussed above in Section B.

[12] This address is located two houses away from the Kent Residence discussed above in Section B

| Leg 2 | 6/24/2019 | 7:18 a.m. | Radisson Sea-Tac | 7:42 a.m. | 24028 111th Pl. SE, Kent WA[13] | Sam Thakur/**TT1** |
| Leg 1 | 1/6/2020 | 2:19 a.m. | Custer, WA | 4:09 a.m. | Sea-Tac Airport | Dave Maer/**TT2** |
| Leg 2 | 1/6/2020 | 4:28 a.m. | Radisson Sea-Tac | 4:46 a.m. | 11211 SE 240th Pl., Kent WA[14] | Sam Thakur/**TT1** |
| Leg 1 | 1/19/2021 | 5:27 a.m. | Ferndale, WA | 8:04 a.m. | Radisson Sea-Tac | Dave Maer/**TT2** |
| Leg 2 | 1/19/2021 | 8:09 a.m. | Radisson Sea-Tac | 9:11 a.m. | Starbucks Lacey, WA[15] | Sam Thakur/**TT1** |
| Leg 1 | 5/29/2021 | 3:38 a.m. | Ferndale, WA | 5:31 a.m. | Radisson Sea-Tac | Dhiren Paras/**TT3** |
| Leg 2 | 5/29/2021 | 5:39 a.m. | Radisson Sea-Tac | 6:25 a.m. | 2719 Fiddelback St, NE, Lacey, WA[16] | Sam Thakur/**TT1** |

57.     The trip detailed above that occurred on May 29, 2021, is the last trip in which Uber Account 1 was used as the second leg of an Uber trip that had originated near the U.S. – Canada border. Uber records also show that in the last year, Uber Account 1 has been less active than it had been during the earlier stages of this investigation, with only thirteen total Uber trips from March 2021, through November 11, 2021.

[13] This address is located approximately .2 miles from the Kent Residence discussed above in Section B.
[14] This address is located across the street from the Kent Residence discussed above in Section B
[15] The drop-off location for this trip is located approximately 2.1 miles from the Lacey Residence discussed above in Sections A and C.
[16] This address is located 180 feet from the Lacey Residence—owned by Daljit KAUR.

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

58.     However, and of note, the last trip ordered by Uber Account 1 occurred on November 11, 2021. This trip originated at a Greyhound/Amtrak Station in Fresno, CA, and terminated in front of 3765 West McKinley, Fresno, CA. Based upon a search of Fresno County records, investigators know that Daljit KAUR is the owner of this property.

59.     As indicated above, records provided by Verizon on January 27, 2022, show that **TT1** is a prepaid account with a subscriber listed as "Info Update" and an address of 295 Parkshore Drive, Folsom, CA. An open-source search of that address reveals that it is a Verizon office building. These records also show that **TT1** has been active, with the same subscriber information associated to it, since January 28, 2018.

### Dave Maer / TT2 Uber Account

60.     According to records provided by Uber on March 4, 2022, an account with the user-name Dave Maer (Uber Account 2) was created on September 27, 2018, and was active as of the date that Uber provided the records. The billing information listed a partial account number associated with a "RuPay" "India Gift card." The e-mail address listed on the account was fivepal360@gmail.com.

61.     According to Uber records, Uber Account 2 has ordered approximately ninety-three Uber trips from January 3, 2019, through February 13, 2022. Significantly, beginning in May 2019, and continuing until October 18, 2021, Uber Account 2 has been used to order thirty-six fares that originated near the U.S. – Canada border and terminated at the Sea-Tac Airport, the Radisson Sea-Tac, or other locations adjacent to Sea-Tac Airport.

62.     Moreover, on January 26, 2022, Uber Account 2 and Uber Account 3 were involved in an apparent split-trip that originated near the U.S. – Canada border and terminated at a hotel in Kent, WA. Specifically, Uber Account 3 ordered a trip that originated near Badger Road in Lynden, WA, at approximately 4:55 a.m. That trip terminated at the Mariner Park and Ride in Everett, WA (hereinafter "Everett Park and Ride"), at approximately 6:19 a.m. At approximately 6:28 a.m., a trip ordered by Uber Account 2, originated at a Starbuck's in Everett, WA—that is 500 feet from the Everett

AFFIDAVIT OF SA DAVID SPITZER - 18
USAO 2018R00962

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

Park and Ride. This second leg, ordered by Uber Account 2, terminated at the Century Motel in Kent, WA (hereinafter "Century Motel"), at 7:09 a.m.

63.    Additionally, beginning on February 9, 2021, and as recently as January 11, 2022, Uber Account 2 ordered sixteen trips that originated at the Radisson Sea-Tac. Each of these sixteen trips terminated at one of three locations: a parking lot in Lacey, WA (eleven trips),[17] the Century Motel (three trips), or a Park and Ride in Kent, WA, that is located approximately .2 miles from the Century Motel (two trips).

64.    Two of these sixteen trips, which occurred on August 30, 2021, and October 1, 2021, appear to be split trips from the area near the U.S. – Canada border, with both legs of each trip being ordered by Uber Account 2. Moreover, even though investigators could not locate the first leg—from the border to Sea-Tac airport—for the other fourteen of these sixteen trips, each of these fourteen trips originated at the Radisson Sea-Tac between 4:56 a.m. and 7:43 a.m., which is consistent with a first leg that originated near the U.S. – Canada Border in the early morning hours.

65.    Based upon Uber records through February 23, 2022, the last trip ordered by Uber Account 2 occurred on February 13, 2022. This trip originated at the Century Motel at 12:39 p.m., and terminated at Sea-Tac Airport at 12:52 p.m.

66.    According to records provided by Verizon on January 27, 2022, **TT2** is a prepaid account with a subscriber listed as "PHONEINTHEBOX OAS" and an address of 295 Parkshore Drive in Folsom, CA, *i.e.*, the same address listed for **TT1**. According to Verizon records, **TT2** has had the same subsriber since September 26, 2018.

### Dhiren Paras / TT3 Uber Account

67.    According to records provided by Uber on March 4, 2022, an account with the user-name Dhiren Paras (Uber Account 3) was created on March 21, 2018, and was

---

[17] As detailed below, on August 30, 2021, and September 22, 2021, investigators, including myself, observed GILL pick-up individuals—suspected of being noncitizens smuggled by the organization—in this Lacey, WA, parking lot in a vehicle registered to Daljit KAUR. Investigators then observed GILL transport those individuals back to the Lacey Residence, owned by Daljit KAUR.

active as of the date that Uber provided the records. The billing information was listed as "gift card." The e-mail address listed on the account was sooramaa@icloud.com.

68.     Uber records show that from May 29, 2021, through February 12, 2022, Uber Account 3 has ordered a total of fifty trips. Of these fifty total Uber fares, twenty-four have involved trips that originated near the U.S. – Canada border and terminated at the Sea-Tac Airport, the Radisson Sea-Tac, or at a gas station located next to Sea-Tac Airport.

69.     One of the twenty-four border trips, which occurred on September 15, 2021, appears to have been in tandem with Uber Account 2. Specifically, the Uber Account 3 border trip terminated at Sea-Tac at 6:34 a.m., with Uber Account 2 ordering a trip that originated at the Radisson Sea-Tac at 6:53 a.m. The second leg of the trip, ordered by Uber Account 2, terminated at the Century Motel at 7:04 a.m.

70.     Another one of the twenty-four border trips, which occurred on September 7, 2021, involved trip-splitting with both legs of the trip being ordered by Uber Account 3. Specifically, the first leg of the trip began near the U.S. – Canada border at 5:01 a.m., and ended at 7:24 a.m. at Sea-Tac Airport. The second leg of the trip originated at the Radisson Sea-Tac at 7:44 a.m., and terminated at 8:29 a.m. at the Lacey, WA parking lot—referenced above that is approximately 2.1 miles from the Lacey Residence.

71.     In addition to the September 7, 2021, trip noted above, Uber Account 3 has ordered another ten trips that originated at the Radisson Sea-Tac. The first of these ten trips occurred on July 15, 2021, and the last was on February 9, 2022. Each of these ten trips terminated at either the Lacey, WA parking lot (five trips) or the Century Motel (five trips).

72.     Finally, Uber records show that from October 13, 2021, through January 26, 2022, Uber Account 3 was used to order nine Uber trips that originated near the U.S. – Canada border and terminated at the Everett Park and Ride. Investigators have only been able to identify the second leg of one of these trips, but the one that they did identify involved Uber Account 2 on January 26, 2022, as discussed above.

AFFIDAVIT OF SA DAVID SPITZER - 20
USAO 2018R00962

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

73.     Based upon Uber records through February 23, 2022, the last trip ordered by Uber Account 3 occurred on February 12, 2022. This trip originated near the U.S. – Canada border in Lynden, WA, at 4:06 a.m., and terminated at Sea-Tac Airport at 6:21 a.m.

74.     AT&T Wireless records show that **TT3** is connected to a prepaid account with the subscriber information labeled as "PREPAID CUSTOMER" with an address of 17330 Preston Road in Dallas, TX. An open-source search of this address revealed an office park with one of the offices being registered to AT&T Mobility LLC. Based on information provided by AT&T, **TT3** has been assigned to the same prepaid customer since January 22, 2019.

75.     In short, based upon the records reviewed relating to Uber Accounts 1-3, common origins/destinations among those accounts, and the patterns observed—to include trip-splitting as detailed above, investigators believe that all three accounts have been used predominantly, if not exclusively, by the smuggling organization to transport noncitizens from the area near the U.S. – Canada border, to intermediate locations (including Sea-Tac Airport and the Everett Park and Ride), and then to locations where the noncitizens are staged (the Kent Residence, Lacey Residence, and Century Motel) before further transportation by the smuggling organization.

76.     As detailed above, investigators believe that the organization has used Uber Accounts 2 and 3 within the last month to transport noncitizens smuggled by the organization.

77.     While Uber Account 1 has not been active since November 11, 2021, as detailed below, investigators believe GILL has used **TT1** as recently as April 3, 2022.

**D.      Review of Surveillance Video of July 24, 2021, Smuggling Event Involving GILL**

78.     In July 2021, investigators interviewed a target of this investigation. During that interview, the target acknowledged that he/she had recently engaged in activities on behalf of the smuggling organization. Based upon information provided by this individual, identifying a specific smuggling event that occurred on July 24, 2021, HSI SAs David Leon

and Laura Marroquin obtained video footage from a Shell gas station, located at 4542 Martin Way E., Olympia, WA.

79. During their review of the surveillance video, investigators noted that at 12:14 a.m., on July 24, 2021, a red sports utility vehicle (SUV) arrived and parked at the station's gas pumps. Approximately three minutes later, a white Nissan Armada, bearing California license plate number 6UKL993, registered to Daljit KAUR at 10074 Dona Neely Way, Elk Grove, CA 95757 (hereinafter "the Armada"), arrived on the opposite side of the gas pump. Investigators then observed six suspected undocumented noncitizens exit the Armada and enter the red SUV. These individuals were traveling with either no personal belongings or, at most, a backpack.

80. At approximately 12:36 a.m., investigators observed the Armada return to the gas station and park at another gas pump. Within seconds, a grey Chrysler Pacifica minivan, bearing Washington license plate BWS4749, approached the opposite side of the gas pump. A male subject with a long grey beard, with a blue zip-up sweatshirt and grey sweatpants, can be seen exiting the driver's seat of the Armada. Based upon my review of the surveillance video, and my review of multiple photographs of GILL, I believe that the driver of the Armada is GILL. GILL can then be seen speaking with the driver of the minivan, and then appears to direct individuals to exit the Armada and enter the grey minivan. Once again, each of the six individuals is observed to have very little personal belongings. After a few minutes, both vehicles depart the area.

81. Based upon registration checks, it was determined that the registered owner of the grey minivan was EAN Holdings, which among other companies, is the parent company of Enterprise Car Rental.

82. According to records provided by Enterprise, the renter of the grey minivan, a 2020 Chrysler Pacifica, bearing Washington license plate BWS4749, was Mayankkumar PATEL with a listed address of 825 Eastern Avenue, Fall River, MA 02721. This vehicle was rented on July 23, 2021, in Puyallup, WA, and returned on July 25, 2021, at Chicago O'Hare International Airport. Importantly, Mayankkumar PATEL has been listed on

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

several other one-way rentals related to this investigation, and this organization is known to use rental vehicles to transport undocumented noncitizens from the Seattle area to other locations throughout the United States, including Chicago.

83. According to an open-source search in Google Maps, the Lacey Residence is approximately a seven-minute drive from the Shell gas station in Olympia, WA. Based on the timeframe observed in the surveillance footage, I believe that after the driver of the Armada—GILL—dropped off the first set of six individuals who left the area in a red SUV, GILL returned to the Lacey Residence, where additional undocumented noncitizens were being staged. I believe that GILL then returned to the same gas station with a second set of noncitizens being smuggled, and these individuals were then further transported in the grey Chrysler minivan that had been rented by Mayankkumar PATEL on July 23, 2021.

84. Based upon a review of records provided by Uber, investigators know that there were six split border trips involving Uber Accounts 2 and 3 between July 15, 2021, and July 23, 2021. Each of these trips originated near the U.S. – Canada border in the early morning hours, was split at the Radisson Sea-Tac, and then terminated at the same Lacey, WA, parking lot—that is approximately 2.1 miles from the Lacey Residence. Investigators believe that some, or all, of these six Uber trips involved the initial transport and staging of undocumented noncitizens at the Lacey Residence, before further transport by the smuggling organization on July 24, 2021, as detailed above.

**E.   Surveillance of August 30, 2021, Smuggling Event Involving GILL**

85. On August 30, 2021, at approximately 4:19 a.m., an Uber driver (hereinafter "Uber Driver 1") provided me with information relating to a fare ordered—with him—by Uber Account 2 that originated near the U.S. – Canada border. Uber Driver 1 advised me that the pickup for this fare occurred at approximately 4:31 a.m. Uber Driver 1 indicated that he was driving a dark colored Toyota Avalon (hereinafter "the Avalon").

86. At approximately 6:30 a.m., agents observed the Avalon enter the parking lot of the Radisson Sea-Tac and drop off four individuals—three adult males and one adult

AFFIDAVIT OF SA DAVID SPITZER - 23
USAO 2018R00962

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

female—all of whom appeared to be of Indian descent. The four individuals each had no more than a backpack in their possession.

87. The Avalon departed the parking lot, and the four individuals continued waiting in front of the hotel for approximately ten minutes. At approximately 6:40 a.m., a silver Toyota Camry, bearing Washington license plate BZE2620, approached the hotel. Agents then observed all four individuals enter the silver Camry. Physical surveillance of the silver Camry was initiated as it left the hotel and continued southbound on Interstate 5.

88. At approximately 7:18 a.m., agents observed the same four individuals exit the silver Camry in the same Lacey, WA, parking lot discussed throughout this affidavit.

89. At approximately 7:24 a.m., the Armada, registered to Daljit KAUR, was observed entering the McDonald's parking lot.

90. Upon arriving at the McDonald's, the driver of the Armada exited the vehicle and agents observed the driver motioning to the four individuals to come towards him. SA Jason Montgomery identified the driver of the Armada as GILL based on a recent photograph that SA Montgomery had observed of GILL. SA Montgomery observed the four individuals walk to the Armada and begin to speak with GILL. The four individuals then entered the Armada, and the vehicle departed with GILL driving. Agents continued physical surveillance of the Armada until it was observed arriving at the Lacey Residence, at approximately 7:30 a.m. Upon arriving, the garage door was opened, the Armada entered the garage, and the garage door was closed immediately before agents observed any passengers exiting the vehicle.

91. Based upon a review of Uber records, investigators know that both legs of this trip, *i.e.*, border area to Radisson Sea-Tac and Radisson Sea-Tac to the Lacey, WA parking lot, were ordered by Uber Account 2.

**F.     Surveillance of September 22, 2021, Smuggling Event Involving GILL**

92. On September 22, 2021, investigators received information from another Uber driver (hereinafter "Uber Driver 2"), that at approximately 3:40 a.m., he picked up

AFFIDAVIT OF SA DAVID SPITZER - 24
USAO 2018R00962

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

four individuals from near the U.S. – Canada border. According to records provided by Uber, subsequently reviewed by investigators, this trip was ordered by Uber Account 2.

93.     Based upon the information provided by Uber Driver 2, agents were able to begin surveillance of this Uber trip on Interstate 5 in Skagit County, WA. Agents continued surveillance of the vehicle, and at approximately 5:59 a.m., observed four individuals exit the vehicle in the parking lot of the Radisson Sea-Tac. SSA James Healy observed that the four individuals appeared to be of Indian descent. The four individuals walked from the Radisson Sea-Tac parking lot to the Red Lion Hotel, directly next door.

94.     At approximately 6:11 a.m., a second vehicle, bearing Washington license plate BRL6748, entered the Red Lion Hotel and picked up the four individuals. This vehicle traveled southbound on Interstate 5 toward Olympia. At approximately 7:05 a.m., law enforcement observed the vehicle drop off the four individuals in front of a Safeway, located at 4280 Martin Way E in Lacey, WA, *i.e.*, the same parking lot used by GILL for the pick-up of suspected undocumented noncitizens on August 30, 2021.

95.     At approximately 7:07 a.m., agents observed the Armada driving around the Safeway parking lot. Agents then observed the Armada approach the individuals and the driver speak with them. All four individuals then entered the vehicle. Based on my observations of the driver and my knowledge of GILL's appearance, I believe the driver of the Armada to be GILL. The Armada was observed arriving at the Lacey Residence at 7:15 a.m. Upon arriving, the garage door was opened, the Armada entered the garage, and the door was closed immediately before agents observed any passengers exiting the vehicle.

**G.     Use of Target Telephones by Subjects of Investigation**

**Target Telephone 1 – Suspected Use by GILL in February 2022**

96.     On February 11, 2022, an HSI Confidential Source (hereinafter "CS-1"),[18] engaged in text communications with a WhatsApp account with **TT1** as the account

---

[18] CS-1 is cooperating with HSI in the hopes of receiving immigration benefits for members of CS-1's family. CS-1 is also cooperating with HSI for potential prosecutorial consideration given his/her concern that he/she would be implicated in the illegal conduct targeted by this investigation.

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

number (hereinafter the "**TT1** WhatsApp Account").[19] According to CS-1, this exchange was with GILL. CS-1 also indicates that he/she has communicated regularly with GILL via **TT1** since at least 2019.

97.     According to CS-1, during the WhatsApp text exchange, CS-1 and GILL discussed federal taxes. GILL stated to CS-1 that GILL would pay less taxes if GILL generated, for other people, IRS Forms 1099—which I know to be used to report contractor expenses to the IRS. GILL informed CS-1 that if he/she knew someone that needed a loan, GILL could provide a Form 1099 to that individual to show that they had sufficient income for the loan. CS-1 indicated that he/she knew someone that could use such proof of income.

98.     GILL asked CS-1 to provide a name, address, and tax identification number for the 1099 that GILL would provide. CS-1 provided the requested information to GILL via the **TT1** WhatsApp Account. CS-1 also provided GILL an e-mail address to which GILL should send the completed Form 1099.

99.     On February 17, 2022, at approximately 3:31 p.m., GILL sent CS-1, via the **TT1** WhatsApp Account, an image of a 2021 Form 1099-NEC. The payer's information was listed as: ICON FREIGHT LOGISTICS; 2501 TOLBERT DR; TRACY, CA 95377; (510) 816-5642. According to records provided by the U.S. Department of Transportation,

---

CS-1 has a personal relationship with GILL that could affect his/her objectivity, and could provide a basis for CS-1 to not fully disclose all information relating to GILL. CS-1 does not have criminal history.

CS-1 has not previously been a confidential informant with HSI or any other law enforcement agency. CS-1 has provided background information on targets of this investigation and documents corroborating the information. The information provided by CS-1 has been corroborated through other means and has been shown to be reliable.

[19] Based upon my training and experience, I know that WhatsApp is an open-source messaging application available on both Android and iPhone smart phones, and Apple and Windows personal computers. I know that the account number for a WhatsApp account must be associated with a cellular telephone number. I also know that to log into a WhatsApp account from another digital device, *i.e.*, that is not associated with the telephone number for the WhatsApp account, a user must have access to the cellular telephone associated with the account for initial login on a new device.

I know that the company president of Icon Freight Logistics is Major Singh, the brother of Daljit KAUR. The nonemployee compensation listed on the form was $84,912.00.[20]

100.   At 3:37 p.m., GILL sent a follow-up message, via the **TT1** WhatsApp Account, in which GILL indicated that he would send the email requested by CS-1 when GILL got home.

101.   At 8:13 p.m., CS-1 received an email from iknaamtransport@gmail.com with a subject line of "GS wala 1099." This subject line is consistent with the full name listed in the Form 1099 that GILL had sent via the **TT1** WhatsApp Account earlier in the day. The Form 1099-NEC was attached to the email, and the document was titled ICON FREIGHT LOGISTICS. The only text in the body of the email was, "Thank you Iknaam Transport Inc. Elk Grove, CA 95757 Ph. (510) 816-5642."

102.   According to a March 2021 Small Business Administration Paycheck Protection Program (PPP) loan submitted on behalf of Iknaam Transport Inc., I know that Daljit KAUR is the owner of this business and is listed as the "CEO" of this company in the PPP loan application.

### Target Telephone 2 – Text Messages Relating to Uber Border Trips in September 2021

103.   On September 25, 2021, I reviewed WhatsApp communications provided to me by Uber Driver 2. These communications were between Uber Driver 2 and a WhatsApp account with the number for **TT2** as the WhatsApp account number (hereinafter "**TT2** WhatsApp Account"). As explained below, though these messages were sent by the **TT2** WhatsApp Account, these messages related to Uber trips ordered by Uber Account 3.

104.   Specifically, on September 15, 2021, at 3:23 a.m., the user of the **TT2** WhatsApp Account messaged Uber Driver 2, "can you come now at 8695 glendale rd

[20] Based on record checks, it is believed that all names, addresses, and taxpayer identification numbers listed on the 1099-NEC are accurate. However, according to CS-1, in 2021, the listed recipient of the nonemployee compensation, G.S.W., did not provide services of any kind to Icon Freight Logistics.

AFFIDAVIT OF SA DAVID SPITZER - 27
USAO 2018R00962

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

lynden wa 98264." However, a review of Uber records shows that this Uber ride, on the morning of September 15, 2021, was requested by Uber Account 3.

105.    Additionally, on September 21, 2021, at 3:11 a.m., the user of the **TT2** WhatsApp Account messaged Uber Driver 2, "8763 weidkamp rd lynden wa 98264." A review of records provided by Uber show that this ride was also requested by Uber Account 3.

106.    Based upon the fact that Uber Account 3 ordered these Uber trips, but the **TT2** WhatsApp Account was being used to send messages relating to these trips, I believe that on these dates, the user of the **TT2** WhatsApp Account and the user of Uber Account 3 were the same individual. Though these Uber trips/WhatsApp text messages only relate to two discrete events, this observed use is consistent with investigators' belief that the same individual, suspected to be GILL, is the user of Uber Accounts 2 and 3, and **Target Telephones 2 and 3**.

### Target Telephone 3 – November 2021 Bond Package with Daljit KAUR Support Letter Listing TT3 as KAUR's Telephone Number

107.    On November 4, 2021, a bond packet was submitted, via email, by an immigration attorney to ICE officers at the Northwest ICE Processing Center (NWIPC) in Tacoma, WA.  The bond packet related to V.S., an undocumented noncitizen who was apprehended by the USBP on October 5, 2021. The bond packet included a letter of support for V.S. which was purportedly authored and signed by Daljit KAUR. In the letter, KAUR stated that her telephone number was **TT3** and that she has had that phone number for the last eight years.

### Target Telephone 4 – Identification and Association to GILL

108.    In April 2020, after numerous undocumented noncitizens were apprehended by United States Border Patrol, that agents believed to be related to this investigation, I began conducting research into phone calls being made to these undocumented noncitizens while they were in ICE custody at NWIPC, Tacoma, WA.

AFFIDAVIT OF SA DAVID SPITZER - 28
USAO 2018R00962

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

109.    Investigators identified **TT4** as a telephone number of interest due to the amount of phone calls made to it by undocumented noncitizens detained at NWIPC. Specifically, from January 2020 through August 2020, nineteen individuals detained in ICE custody at NWIPC called **TT4**.

110.    Due to the calls being in the Hindi language, I sent a sample phone call to HSI SA Waseem Iqbal, who is fluent in the Hindi language.  SA Iqbal informed me that that he believed that the user of **TT4** in the call that I provided to him was GILL. SA Iqbal told me that he could recognize GILL's voice and dialect. SA Iqbal based his assessment on the quantity of other calls that he has listened to throughout this investigation, which include known exemplars of GILL's voice from 2010 and 2011 when GILL was detained at the NWIPC prior to being deported from the United States for the second time.

111.    According to records provided by AT&T as recently as February 1, 2022, **TT4** was activated on December 1, 2019. According to these records, the listed subscriber for **TT4** is "PREPAID CUSTOMER" with a user address "123 Your Street, Your Town, GA 98022." Consistent with the above subscriber information, billing information associated with **TT4** indicates that the payment type is "prepaid." According to these records, there has been no change in the subscriber of **TT4** since it was activated in December 2019.

**Target Telephone 4 – Use by GILL in Support of Target Offenses**

112.    On or about December 14, 2021, an HSI Confidential Source, (hereinafter "CS-2"),[21] was told by a contact in India that there were three recent arrivals from India in

---

[21] CS-2 has been an HSI source of information, and later a confidential informant, since Summer 2021. CS-2 has previously been identified as a target of this investigation and his/her activities in support of the smuggling organization have been detailed in warrant applications submitted to the Court. CS-2 is cooperating with the government in the hope of receiving prosecutorial consideration. CS-2 has a criminal history related to his/her unlawful entry into the United States. CS-2 is subject to an outstanding order of removal issued by an immigration judge, *in absentia*, under a different and false name that CS-2 had provided to USBP upon his initial apprehension in 2003.  Due to his/her cooperation in this investigation, he/she is currently receiving deferred action from HSI. CS-2 has an application pending with immigration authorities that could ultimately result in lasting status that would allow CS-2 to remain in the United States.  However, his/her

Toronto, Canada.  Based upon this phone conversation, and CS-2's prior involvement in the smuggling organization, CS-2 understood that these three individuals were seeking assistance with entry into the United States without authorization. That same day, CS-2 and GILL, using **TT4**, discussed this matter via recorded phone call.[22]

113.    On December 18, 2021, at approximately 9:04 a.m., GILL, using a WhatsApp account with **TT4** as the account number (hereinafter "the **TT4** WhatsApp Account"), texted CS-2 the following in the Hindi language, "Hi Brother, send those Toronto people in" and "give them your new name."

114.    On December 18, 2021, CS-2 contacted facilitators in India and indicated that the three individuals would be smuggled into the United States through British Columbia.  The facilitators in India then booked flight reservations from Toronto to Vancouver on December 21, 2021, for these three individuals.

115.    On December 19, 2021, at approximately 9:15 a.m., CS-2 texted, to the **TT4** WhatsApp Account, pictures, names, phone numbers, and flight itinerary of the three individuals that were to be smuggled by GILL.

116.    On December 21, 2021, Canada Border Services Agency (CBSA) officers in Toronto positively identified all three individuals at the time of check-in at the Toronto International Airport.  Upon arrival, CBSA officers in Vancouver also positively identified all three individuals inside the domestic terminal at the Vancouver International Airport.

---

prior participation in the smuggling organization's activities, and immigration history, could detrimentally affect that application.

CS-2 has not previously been a confidential informant with HSI or any other law enforcement agency. During the time that CS-2 has been cooperating with HSI in this investigation, CS-2 has provided actionable information related to the smuggling organization's activity, which has resulted in several arrests of undocumented noncitizens subsequent to their unlawful entry into the United States. Based on these arrests, and other background information related to subjects of investigation—some of which, but not all of which agents have been able to externally corroborate—the information provided by CS-2 has been shown to be reliable.

[22] According to CS-2, he/she has spoken to GILL using **TT4** for at least two years and knows that the user of **TT4** is GILL based upon both phone conversations and face-to-face meetings.

AFFIDAVIT OF SA DAVID SPITZER - 30
USAO 2018R00962

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

117.    During the next month, numerous events occurred which resulted in these three people not being crossed into the United States, including flooding in northern Whatcom County, a week of snow in which areas in northern Whatcom County received a foot or more of snow, and the surveillance of suspected members of the smuggling organization in British Columbia during which members of the organization identified that they were under surveillance by law enforcement.

118.    On January 25, 2022, GILL, using the **TT4** WhatsApp Account, texted CS-2 a photo of one the individual being smuggled by the organization, herein referred to as K.P. The photo of K.P. had an American flag digitally transposed over his shirt.

119.    On January 25, 2022, GILL, using the **TT4** WhatsApp Account, called CS-2 and informed CS-2 that "two, two have come." GILL further stated, "they have to take a flight," and "they can't stay in a hotel for so long." GILL concluded, "with their luck they have arrived. It's their fate." This call was recorded.

120.    Later that afternoon, using the **TT4** WhatsApp Account, GILL sent a screenshot to CS-2 of a January 25, 2022, flight reservation that had been booked from Seattle, WA, to Nashville, TN. The name associated with the reservation was K.P., *i.e.*, the name of the individual who GILL had sent the picture of earlier in the day with an American flag digitally added to the photo. Based upon open-source record checks, On January 25, 2022, Delta Flight 1037 departed from Sea-Tac Airport at 5:52 p.m., and arrived at Nashville International Airport at 11:40 p.m.

121.    Moreover, according to the records provided by Uber on March 4, 2022, Uber Account 2, ordered an Uber trip that originated at the Century Motel at 3:43 p.m., and arrived at Sea-Tac Airport at 3:58 p.m., *i.e.*, approximately one-hour forty-five minutes before the scheduled departure of Delta Flight 1037.

122.    On January 26, 2022, GILL, using the **TT4** WhatsApp Account, texted CS-2 a photo of another individual, J.C., also with an American flag digitally transposed over his shirt. After receiving this photo, CS-2 called GILL, at the **TT4** WhatsApp Account. GILL informed CS-2 that, ". . . three have come. Two girls and this boy" (which in context,

investigators understand the reference to a "boy" to be a reference to J.C.).  This call was recorded.

123.    Later, on January 26, 2022, again using the **TT4** WhatsApp Account, GILL sent a screenshot to CS-2 of a January 26, 2022, domestic flight reservation from Seattle, WA, to Chicago, IL. The name associated with the reservation was J.C.  Records provided by Delta, confirm that J.C. was a passenger on Delta Flight 1116, that departed from Sea-Tac Airport at 10:59 p.m., and arrived at Chicago O'Hare International Airport at 4:19 a.m. the following day.

124.    Moreover, according to the records provided by Uber on March 4, 2022, Uber Account 2, ordered an Uber trip that originated at the Century Motel at 6:24 p.m., and arrived at Sea-Tac Airport at 6:38 p.m.  Of note, according to the itinerary sent by GILL using the **TT4** WhatsApp Account to CS-2, Delta Flight 1116 was scheduled to depart Sea-Tac at 9:00 p.m., on January 26, 2022, but actual departure was not until 10:59 p.m.

125.    On January 28, 2022, I was notified by USBP Intelligence Agents that they had apprehended two Indian citizens near the U.S. – Canada border, the previous night at approximately 11:19 p.m. One of the two Indian citizens apprehended by USBP was identified as H.C.

126.    On January 28, 2022, at 2:59 a.m., CS-2 provided me a screenshot of a text message that had been sent to CS-2 from the **TT4** WhatsApp Account on January 28, 2022, at 12:42 a.m. The text message sent by the **TT4** WhatsApp Account consisted of only the name for H.C. and a thumbs down emoji. Based upon USBP's apprehension of H.C. approximately one hour before the **TT4** WhatsApp Account sent this message, I believe this text message was GILL's way of notifying CS-2 that H.C. had been apprehended by USBP.

127.    On January 29, 2022, GILL, using the **TT4** WhatsApp Account, contacted CS-2 and initially requested payment in the amount of $11,500 per person for the two people (K.P. and J.C.) that the organization had successfully brought into the United States.

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

Upon request by CS-2, GILL reduced his fee to $11,000 per person, but indicated, "from now on, make it eleven five hundred, because there are a lot of expenses." Later in the call, GILL stated, "I have to get this money to Raj. He is in Canada." This call was recorded.

128.   On January 30, 2022, GILL, using the **TT4** WhatsApp Account, contacted CS-2 and informed him/her that GILL would send instructions on how to send the money owed to GILL. This call was recorded.

129.   On February 2, 2022, GILL, using the **TT4** WhatsApp Account, sent CS-2 the following name and address, "Dipak patel, 490 Broadway Street, Brandenburg ky 40108." In a follow-up message, using the **TT4** WhatsApp Account, GILL asked CS-2 to send the check in the mail to the above address and to send GILL a copy of the check, along with the tracking number.

130.   On February 4, 2022, agents from HSI New York, acting in an undercover capacity, received payment of the $22,000 smuggling fee from an unknown male of Indian descent. HSI agents then obtained a cashier's check in the amount of $22,000 and sent the check via FedEx to the name and address that had been provided by GILL. As instructed, CS-2 sent GILL, via the **TT4** WhatsApp Account, a picture of the check and the tracking number. GILL, using the **TT4** WhatsApp Account, responded back with a praying hands emoji.

131.   On February 15, 2022, FedEx provided a single IP address relating to customer tracking—on February 5, 2022—of the $22,000 check that HSI had sent via FedEx to the address provided by GILL. Investigators determined that this IP address was associated with service provided by Alibaba.com. Based upon correspondence with Alibaba.com, investigators were advised that service of legal process for such requests must be made through Alibaba Cloud Computing, Ltd., in the People's Republic of China.

## H.   Identification of New Uber Accounts

132.   On March 17, 2022, Uber provided trip data for additional Uber accounts that are suspected of being used by the smuggling organization to transport noncitizens

from the U.S. – Canada border to the Seattle metropolitan area. The two newly identified accounts were in the names of "pal winder" (hereinafter "Uber Account 4) and "Avr Suri" (hereinafter "Uber Account 5). The telephone number associated with Uber Account 5 was (628) 224-5202, *i.e.*, the call number associated with **TT5**.

133.    According to records provided by AT&T on March 21, 2022, **TT5** is a prepaid account with a subscriber listed as "PREPAID ACCOUNT" and an address of 123 Your Street, Your Town, GA 94131. The subpoenaed information also revealed that **TT5** has been active with the same subscriber since October 20, 2021.

### I.    Identification of Capital One Credit Card

134.    On March 23, 2022, Capital One Bank (USA), N.A., provided records for the credit card (hereinafter "the Capital One credit card") that had purchased airfare for K.P.'s fight (Delta #1037) from Seattle to Nashville on January 25, 2022, and J.C.'s flight (Delta #1116) from Seattle to Chicago on January 26, 2022. According to the records provided by Capital One, the account holder for this credit card is "Jaipaul Singh."[23] Additionally, the address of record for this account was listed as 10074 Dona Neely Way, Elk Grove, CA, *i.e.*, a residence owned by Daljit KAUR, where GILL is suspected to reside.

135.    Capital One also provided the phone number listed on the account. An administrative subpoena to Verizon revealed that the subscriber of the phone number listed on this account is Daljit KAUR at the Elk Gove residence.

136.    Finally, Capital One also provided payment information for the credit card account and it was determined that most payments were being paid from a Bank of America checking account for Iknaam Transport, Inc. As previously noted, KAUR is listed as the CEO of this company.

---

[23] Investigators believe this name to be an alias of GILL. A Bank of America (BoA) account previously identified during this investigation also used the name of Jaipaul Singh. This bank account, which was closed in October 2021, had an associated phone number of TT1 and an address of 13461 Marengo Road in Galt, CA, which is owned by KAUR. This BoA account was used to pay 10 of the 114 payments during the requested time period on the Capital One credit card.

AFFIDAVIT OF SA DAVID SPITZER - 34
USAO 2018R00962

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

**J.**   **Analysis of Uber and Capital One Records Suggests that the Capital One Credit Card is Being Used by the Smuggling Organization to Purchase Airfare for Noncitizens Smuggled by the Organization**

137.   On December 23, 2021, at approximately 3:16 a.m., Uber Account 3 ordered a ride from near the U.S. – Canada border to the Sea-Tac Airport. A subsequent trip-splitting ride, also ordered by Uber Account 3, departed at 5:25 a.m. from the Radisson Sea-Tac, and arrived at the Century Motel at 5:36 a.m. Later that evening, at approximately 9:26 p.m., Uber Account 5 was used to order a ride from the Century Motel to the Sea-Tac Airport.

138.   On December 23, 2021, a United Airlines flight from Seattle, WA, to Newark, NJ, was booked using the Capital One credit card account for two passengers. The credit card statement listed the United Airlines ticket number and the passenger names "PATEL/NIRAV B" and "PATEL/TUSHAR B."

139.   A review of the United Airlines passenger manifest for Flight 2345 with service from Seattle, WA to Newark, NJ, showed two passengers listed as "PATEL/TUSHAR B" and "PATEL/TUSHAR B." The manifest also revealed that the two passengers did not have any checked bags. In my experience, and based upon the investigation to date, individuals that are smuggled unlawfully into the United States do not possess more than a small bag of personal belongings.

140.   On December 24, 2021, at approximately 2:53 a.m., Uber Account 5 ordered a ride from near the U.S. – Canada border to the Sea-Tac Airport. A subsequent trip-splitting ride, ordered by Uber Account 2, departed from the Radisson Sea-Tac at 5:01 a.m., and arrived at the Kent-Des Moines Park & Ride—which is located approximately 0.2 miles from the Century Motel—at 5:11 a.m. Later that afternoon, at approximately 3:02 p.m., Uber Account 2 ordered a ride from the Century Motel to the Sea-Tac Airport.

141.   On December 24, 2021, an Alaska Airlines flight from Seattle, WA, to Chicago-O'Hare International Airport, was booked using the Capital One credit card

account for two passengers. The credit card statement listed the Alaska Airlines ticket number and passenger names "PATEL/PARAS B" and "PATEL/AKSHAYKUMAR J."

142.    A review of the Alaska Airlines passenger manifest for Flight 26 with service from Seattle, WA, to Chicago-O'Hare International Airport showed the passengers listed as "PATEL, PARAS B" and "PATEL, AKSHAYKUMAR J."

143.    On February 2, 2022, at approximately 2:53 a.m., Uber Account 5 ordered a ride from near the U.S. – Canada border to the Sea-Tac Airport. A subsequent trip-splitting ride, ordered by Uber Account 3, departed from the Radisson Sea-Tac at 3:43 a.m., and arrived at the Century Motel at 3:52 a.m. Later that evening, at approximately 9:07 p.m., Uber Account 2 ordered a ride from the Century Motel to the Sea-Tac Airport.

144.    On February 2, 2022, a United Airlines flight from Seattle, WA to Newark, NJ was booked using the Capital One credit card account for two passengers. The credit card statement listed the United Airlines ticket number and passenger names "DARJI/KOMALBEN K" and "DARJI/KIRANKUMAR J."

145.    A review of the United Airlines passenger manifest for Flight 2680 with service from Seattle, WA, to Newark, NJ, showed two passengers listed as "DARJI/KIRANKUMARJ" and "DARJI/KOMALBENK." The manifest also revealed that the two passengers did not have any checked bags.

146.    According to CBSA records, Komalben Kiranbhai Darji and Kirankumar Jagdishbhai Darji, entered Canada at Pearson International Airport, Toronto, Canada, on December 24, 2021. A search of U.S. law enforcement databases revealed that Kirankumar Jagdishbhai Darji was refused a visitor visa to the United States in 2015. There is no record of any lawful admission into the United States for either individual.

147.    On February 8, 2022, at approximately 11:51 p.m., Uber Account 5 ordered a ride from near the U.S. – Canada border to the Sea-Tac Airport. A subsequent trip-splitting ride, ordered by the Uber Account 3 on February 9, 2022, departed from the Radisson Sea-Tac at 2:04 a.m., and arrived at the Century Motel at 2:13 a.m. Later that

AFFIDAVIT OF SA DAVID SPITZER - 36
USAO 2018R00962

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

evening, at approximately 9:28 p.m., Uber Account 2 ordered a ride from the Century Motel to the Sea-Tac Airport.

148.    On February 9, 2022, an Alaska Airlines flight from Seattle, WA to Chicago-O'Hare was booked using the Capital One credit card account for one passenger. The credit card statement listed the Alaska Airlines ticket number and passenger name "PATEL/DRASTIBEN B."

149.    A review of the Alaska Airlines passenger manifest for Flight 718 with service from Seattle, WA, to Chicago-O'Hare International Airport, showed one passenger listed as "PATEL, DRASTIBEN B."

150.    CBSA searched their records and found a match to this subject that entered Canada on a student visa to attend St. Clair College. The subject, Drashtiben Bhikhabhai PATEL, entered Canada through Montréal–Trudeau International Airport on October 29, 2021. CBSA confirmed with the college that the subject never enrolled for classes at this college. A review of various law enforcement databases indicate that this individual has never applied for permission to enter, nor been lawfully admitted into, the United States.

151.    During the period requested for the Capital One credit card records (December 10, 2020 – February 21, 2022), the account was used to purchase $12,400.38 in airfare. Significantly, none of the passenger names for any flights listed on the credit card statements showed the name of the credit card holder.

**K.    TT3 and TT4 Cell-Site Tower Pings near Lacey Residence During Suspected Smuggling Events**

152.    On Sunday March 20, 2022, AT&T provided data in response to a cell-site location information search warrant issued by the Honorable Michelle L. Peterson on March 11, 2022. MJ22-096(2) (W.D. Wash. March 20, 2022).

153.    On February 8, 2022, at approximately 11:51 p.m., Uber Account 5 ordered a ride from near the U.S. – Canada border to Sea-Tac Airport. This trip was split at Sea-Tac Airport and the second leg of the trip—ordered by Uber Account 3—arrived at the Century Motel at approximately 2:13 a.m.

AFFIDAVIT OF SA DAVID SPITZER - 37
USAO 2018R00962

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

154.    According to cell-site search warrant returns provided by AT&T, at 11:05 p.m., on February 8, **TT3** pinged off a cell tower approximately 2100 meters from the Elk Grove residence. According to these same records, the next ping for **TT3** occurred on February 9, 2022, at 7:43 a.m. This ping was off the same tower located approximately 2100 meters from the Elk Grove residence.

155.    As noted above, on February 9, 2022, the Capital One credit card purchased Airfare for "PATEL/DRASTIBEN B" from Seattle, WA, to Chicago-O'Hare.

156.    On February 10, 2022, at approximately 11:44 p.m., Uber Account 3 ordered a ride from near the U.S. – Canada border to Kent, WA. On February 11, 2022, at approximately 2:03 a.m., Uber Account 2 ordered a ride from the previous drop-off location to the Century Motel. Just prior to the origination leg, at 11:07 p.m. on February 10, 2022, **TT3** pinged off a cell tower approximately 750 meters from the Elk Grove residence.

157.    On February 11, 2022, at approximately 10:40 a.m., Uber Account 2 ordered a ride from near the Century Motel to the Sea-Tac Airport. Just prior to this trip, at 9:04 a.m., **TT3** pinged off a cell tower approximately 2100 meters from the Elk Grove residence.

158.    Of note, **TT4** had two pings between 6:00 p.m. on February 10, 2022, and 6:00 p.m. on February 11, 2022. Those pings occurred at 6:52 p.m. on February 10, 2022, and at 1:02 a.m. on the morning of February 11, 2022. Both pings were off a cell tower located approximately 2100 meters from the Elk Grove residence.

159.    On February 11, 2022, the Capital One credit card purchased Airfare for "CHAUDHAR I/KENIS" from Seattle, WA, to Chicago-O'Hare.

160.    On February 12, 2022, at approximately 4:06 a.m., Uber Account 3 ordered a ride from near the U.S. – Canada border that arrived at Sea-Tac Airport at approximately 6:21 a.m. At 6:39 a.m., Uber Account 5 ordered a trip that originated at the Radisson SeaTac and ended at the Century Motel at 6:50 a.m. According to AT&T records, at 6:18 a.m. **TT3** pinged off a cell tower approximately 750 meters from the Elk Grove residence.

AFFIDAVIT OF SA DAVID SPITZER - 38
USAO 2018R00962

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

161.   On February 12, 2022, at 1:28 a.m., **TT4** pinged off a cell tower approximately 2100 meters from the Elk Grove residence. The next ping for **TT4** was at 10:27 a.m. This ping was off a cell tower located approximately 1700 meters from a residence in Galt, CA, owned by Daljit KAUR.

162.   On February 12, 2022, the Capital One credit card purchased Airfare for "BHAVSAR/RAJKUMAR S" from Seattle, WA, to Chicago-O'Hare.

163.   On March 1, 2022, at approximately 12:08 a.m., Uber Account 5 ordered a trip from near the U.S. – Canada border to Kent, WA.  On February 28, 2022, at 11:37 p.m., **TT3** pinged off a cell tower approximately 2100 meters from the Elk Grove residence.

**L.    March 29, 2022, U.S. Border Patrol Apprehension and Analysis of PR/TT Data for WhatsApp Accounts Associated with TT1-TT4.**

164.   On March 23, 2022, a court-authorized pen register / trap and trace (PR/TT) was installed on the **TT1-TT4** WhatsApp Accounts. As detailed below, a  review of the PR/TT data for these accounts showed a significant increase in call and text message activity prior to, during, and after a USBP apprehension of the two Indian nationals on March 29, 2022.

165.   On March 29, 2022, at approximately 10:28 p.m., Blaine Sector dispatch notified Border Patrol agents of two individuals crossing unlawfully into the United States from Canada near Lynden, WA. Agents immediately responded to the area, encountered the two individuals, determined they were Indian nationals present in the United States unlawfully, and placed them under arrest at approximately 10:32 p.m.

166.   Overall, from March 23, 2022, through March 30, 2022, there were 240 total incoming and outgoing phone calls and 1,224 text messages involving the four WhatsApp accounts. Nearly one-third of the phone calls occurred during a 24-hour period between 10:00 am on March 29, 2022, and 10:00 am on March 30, 2022.

167.   In the 24-hour period prior to and after the smuggling event, there were thirty-two phone calls and 110 text messages exchanged between the **TT4** WhatsApp

Account and a WhatsApp Account associated with (604) 418-8312—a previously unidentified Canadian phone number. Significantly, there was no prior communication between the two WhatsApp accounts between March 23, 2022, and the first observed contact that occurred on March 29, 2022, at 11:56 a.m.

168.    Moreover, during this same 24-hour period (beginning on March 29, 2022, at 10:00 a.m.) an additional nine phone calls and twenty-eight text messages were exchanged between the **TT4** WhatsApp Account and another WhatsApp Account associated with (778) 848-8634—which also is a Canadian phone number. Again, as with the WhatsApp Account associated with (604) 418-8312, there had been no communication between the **TT4** WhatsApp and this account in the week prior.

169.    Finally, between 1:33 p.m. on March 29, 2022, and 9:33 a.m., on March 30, 2022, there was a significant increase in communication between the **TT1** WhatsApp Account and a WhatsApp account associated with (604) 356-2505—yet another a Canadian phone number. Specifically, there were a total of eighteen phone calls and forty-five text messages took place between the **TT1** WhatsApp account and the WhatsApp account associated with (604) 356-2505.[24]

170.    It should be noted that while **TT2** and **TT3** have had activity during the PR/TT period, no phone calls or text messages were made or received from either of these numbers on March 29, 2022, or March 30, 2022.

**M.    Identification of New Cell Phone (TT6) Used by Jaspal Gill**

171.    On March 30, 2022, at approximately 3:04 p.m., the user of the **TT4** WhatsApp Account texted CS-2, "new nu. 2532982097," *i.e.*, the call number associated with **TT6**.

---

[24] It should be noted that while the **TT2** and **TT3** WhatsApp accounts had activity during the PR/TT period, no phone calls or text messages were made or received from either of these WhatsApp accounts on March 29, 2022, or March 30, 2022.

AFFIDAVIT OF SA DAVID SPITZER - 40
USAO 2018R00962

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

172.   On March 31, 2022, at approximately 9:50 a.m., CS-2 placed a WhatsApp call to the WhatsApp account with (253) 298-2097 as the account number (hereinafter the "**TT6** WhatsApp Account"). The call was recorded and was approximately nine minutes in duration. During that call, CS-2 confirmed that the user of the **TT6** WhatsApp Account was GILL.

173.   According to records provided by AT&T on March 31, 2022, **TT6** was activated on March 30, 2022. According to these records, the listed subscriber for TT6 is "PREPAID CUSTOMER" with a user address "123 YOUR STREET, YOUR TOWN, GA 98409." The records further indicate that the account was opened on March 30, 2022, *i.e.*, the day after the U.S. Border Patrol apprehension noted above.

N.   **The Armada Returns to the Lacey, WA, residence on March 31, 2022**

174.   On March 31, 2022, at approximately 9:19 p.m., a vehicle similar to the Armada—registered to Daljit KAUR at 10074 Dona Neely Way, Elk Grove, CA 95757—was observed, via video surveillance, arriving at and entering the garage of the Lacey residence.  Due to the time of day, I was unable to see the license plate and therefore could not confirm the vehicle registration. However, an individual matching GILL's physical characteristics was also observed exiting the driver's side of the Armada. Upon exiting the vehicle, this individual was then observed entering the Lacey residence through a door in the garage.

175.   On April 1, 2022, at approximately 3:19 p.m.—which was the next time a vehicle was observed exiting the garage of the Lacey residence—I was able to positively identify the Armada as the vehicle registered to Daljit KAUR at the Elk Grove residence.

**KNOWLEDGE BASED ON TRAINING AND EXPEREINCE**

176.   Based on my training and experience, I know each cellular device has one or more unique identifiers embedded inside it. Depending on the cellular network and the device, the embedded unique identifiers for a cellular device could take several different forms, including an Electronic Serial Number (ESN), a Mobile Electronic Identity Number (MEIN), a Mobile Identification Number (MIN), a Subscriber Identity Module (SIM), a

AFFIDAVIT OF SA DAVID SPITZER - 41
USAO 2018R00962

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

Mobile Subscriber Integrated Services Digital Network Number (MSISDN), an International Mobile Subscriber Identifier (IMSI), or an International Mobile Equipment Identity (IMEI). The unique identifiers -- as transmitted from a cellular device to a cellular antenna or tower -- can be recorded by pen-traps and indicate the identity of the cellular device making the communication without revealing the communication's content.

177.    Based on my training and experience, I know that when a cell phone connects to a cellular antenna or tower, it reveals its embedded unique identifiers to the cellular antenna or tower, and the cellular antenna or tower records those identifiers as a matter of course. The unique identifiers -- as transmitted from a cell phone to a cellular antenna or tower -- are like the telephone number of an incoming call. They can be recorded by pen-trap devices and indicate the identity of the cell phone device making the communication without revealing the communication's content. In addition, a list of incoming and outgoing telephone numbers is generated when a cell phone is used to make or receive calls, or to send or receive text messages (which may include photographs, videos, and other data). These telephone numbers can be recorded by pen-trap devices and then used to identify the parties to a communication without revealing the communication's contents.

178.    Based my training and experience, I know that a cell phone can also be used to exchange text messages with email accounts. The email addresses associated with those text messages can be recorded by pen-trap devices and then used to identify parties to a communication without revealing the communication's contents.

179.    Based on my training and experience, I know that cellular phones can connect to the internet via a cellular network. When connecting through a cellular network, internet communications sent and received by the cellular phone each contain the same unique identifier that identifies cellular voice communications, such as an ESN, MEIN, MIN, SIM, IMSI, MSISDN, or IMEI. Internet communications from a cellular phone also contain the IP address associated with that cellular phone at the time of the communication. Each of these unique identifiers can be used to identify parties to a communication without revealing the communication's contents.

AFFIDAVIT OF SA DAVID SPITZER - 42
USAO 2018R00962

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

180.   In my training and experience, I have learned that AT&T and Verizon are companies that provide cellular telephone access to the general public. I also know that certain providers of cellular telephone service have technical capabilities that allow them to collect and generate information about the locations of the cellular telephones to which they provide service, including E-911 Phase II data (also known as GPS data or latitude-longitude data) and cell-site data (also known as "tower/face information" or cell tower/sector records). E-911 Phase II data provides relatively precise location information about the cellular telephone itself, either via GPS tracking technology built into the phone or by triangulating on the device's signal using data from several of the provider's cell towers. Cell-site data identifies the cell towers (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular telephone and, in some cases, the "sector" (i.e., faces of the towers) to which the telephone connected. These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas. Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device. Accordingly, cell-site data is typically less precise that E-911 Phase II data.

181.   Based on my training and experience, I know that AT&T and Verizon can collect E-911 Phase II data about the location of the Target Telephones, including by initiating a signal to determine the location of the Target Telephones on their networks or with such other reference points as may be reasonably available.

182.   When using a cellular connection to receive or transmit data, a cellular phone typically utilizes a cell tower to make telephone calls, send or receive text messages, send or receive emails, surf the internet, carry out application-initiated data transfers, among other things.

183.   Based on my training and experience, I know that AT&T and Verizon can collect cell-site data about Target Telephones. Based on my training and experience, I know that for each communication (including data connections) a cellular device makes, its wireless service provider can typically determine: (1) the date and time of the

communication; (2) the telephone numbers involved, if any; (3) the cell tower to which the customer connected at the beginning of the communication; (4) the cell tower to which the customer connected at the end of the communication; and (5) the duration of the communication. I also know that wireless providers such as AT&T and Verizon typically collect and retain cell-site data pertaining to cellular devices to which they provide service in their normal course of business in order to use this information for various business-related purposes.

184.    Different service providers use different systems, applications, and reports to collect or analyze cell site data. These systems, applications, and reports are referred to by a variety of names including, but not limited to real-time tool or "RTT" (Verizon), Periodic Location Updates or "PLU" (Verizon), per call measurement data or "PCMD" (Sprint), Location Database of Record or "LOCDBOR" (AT&T), EVDO, ALULTE, Timing Advance and True Call (T-Mobile/Sprint/US Cellular/GCI).  RTT data, for example, estimates the approximate distance of the cellular device from a cellular tower based upon the speed with which signals travel between the device and the tower. This information can be used to estimate an approximate location range that is more precise than typical cell-site data.

185.    Based on my training and experience, I know that wireless providers such as AT&T and Verizon typically collect and retain information about their subscribers in their normal course of business. This information can include basic personal information about the subscriber, such as name and address, and the method(s) of payment (such as credit card account number) provided by the subscriber to pay for wireless communication service. I also know that wireless providers such as AT&T and Verizon typically collect and retain information about their subscribers' use of the wireless service, such as records about calls or other communications sent or received by a particular device and other transactional records, in their normal course of business. In my training and experience, this information may constitute evidence of the crimes under investigation because the

AFFIDAVIT OF SA DAVID SPITZER - 44
USAO 2018R00962

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

information can be used to identify the Target Telephone's user or users and may assist in the identification of co-conspirators and/or victims.

186.    Modern cell phones allow users to switch their telephone numbers, use multiple telephone numbers on a single device, and transfer their telephone number to a different cell phone. These changes can be made with the assistance of the wireless provider or by taking actions such as changing the "SIM card" (short for "subscriber identity module card") of a cellphone. To provide for any such changes made to the Target Telephones, Attachments A1-A2 specify that the property to be searched includes: (i) any instrument to which the listed target telephone number was assigned within the last 30 days, and that now has been assigned a changed telephone number, (ii) any changed telephone number assigned to an instrument now bearing the same unique identifying number (such as an IMSI, ESN, MSID, or IMEI) as the telephone number listed above, or that was bearing the same unique identifying number as the telephone number listed above, at any point within the last 30 days, (iii) any changed unique identifying number subsequently assigned to the same telephone number, or (iv) any additional changed telephone number and/or unique identifying number, whether the changes occur consecutively or simultaneously, listed to the same subscriber and wireless telephone account number as the telephone numbers listed above, within the period of disclosure authorized by this warrant.

## AUTHORIZATION REQUEST FOR TARGET TELEPHONES

187.    Based on the fact set forth in this affidavit, there is probable cause to conclude that violations of 8 U.S.C. §§ 1324(a)(1)(A)(i) and (a)(2)(B)(ii), Alien Smuggling, and 18 U.S.C. §§ 1956(a)(1), and (h), Laundering of, and Conspiracy to Launder, Monetary Instruments, have been committed, are being committed, and will be committed by users of the target telephone(s) and others who are known and unknown. The requested information, including prospective location information, for the target telephone(s) will help law enforcement monitor the user(s) of the target telephone(s), follow their movements when they are at locations that are otherwise hard for law

enforcement to observe, and identify other coconspirators, sources of supply, storage locations, and other people and places of evidentiary value. There is probable cause to believe that the use of the investigative technique described by the warrant will result in officers learning that identifying information.

188.    Based on the foregoing, I request that the Court issue the proposed search warrant and pen-trap order, pursuant to Federal Rule of Criminal Procedure 41, 18 U.S.C. § 2703(c), and 18 U.S.C. § 3123.

189.    I further request, pursuant to 18 U.S.C. § 3103a(b) and Federal Rule of Criminal Procedure 41(f)(3), that the Court authorize the officer executing the warrant to delay notice to the subscriber or user of the Target Telephone(s) until 90 days after the collection authorized by the warrant has been completed. There is reasonable cause to believe that providing immediate notification of the warrant may have an adverse result, as defined in 18 U.S.C. § 2705. Providing immediate notice to the subscriber or user of the Target Telephone(s) would seriously jeopardize the ongoing investigation, as such a disclosure would give that person an opportunity to destroy evidence, change patterns of behavior, notify confederates, and flee from prosecution. *See* 18 U.S.C. § 3103a(b)(1). As further specified in Attachments B1-B2, which are incorporated into the warrant, the proposed search warrant does not authorize the seizure of any tangible property. *See* 18 U.S.C. § 3103a(b)(2). Moreover, to the extent that the warrant authorizes the seizure of any wire or electronic communication (as defined in 18 U.S.C. § 2510) or any stored wire or electronic information, there is reasonable necessity for the seizure for the reasons set forth above. *See* 18 U.S.C. § 3103a(b)(2).

190.    I further request that the Court direct AT&T and Verizon to disclose to the government any information described in Attachments B1-B2 that is within the possession, custody, or control of AT&T and Verizon. I also request that the Court direct AT&T and Verizon to furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the information described in Attachments B1-B2 unobtrusively and with a minimum of interference with AT&T or Verizon's services,

AFFIDAVIT OF SA DAVID SPITZER - 46
USAO 2018R00962

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

including by initiating a signal to determine the location of the Target Telephone(s) on AT&T or Verizon's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The agency shall reasonably compensate AT&T and Verizon for reasonable expenses incurred in furnishing such facilities or assistance.

191.    Pursuant to 18 U.S.C. § 2703(g), the government will execute these warrants by serving the warrants on AT&T or Verizon. Because the warrants will be served on AT&T or Verizon, who will then compile the requested records and data, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night. I therefore request that the Court authorize execution of the warrant at any time of day or night, owing to the potential need to locate the Target Telephone(s) outside of daytime hours.

192.    This warrant is being submitted via reliable electronic means. Fed. R. Crim. P. 4.1 & 41(d)(3).

DAVID J. SPITZER
Special Agent,
Homeland Security Investigations

The above-named agent provided a sworn statement to the truth of the foregoing affidavit by telephone on this 6th day of April, 2022.

HON. PAULA L. McCANDLIS
United States Magistrate Judge

AFFIDAVIT OF SA DAVID SPITZER - 47
USAO 2018R00962

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

# EXHIBIT 1

## DECLARATION

I, Joseph C. Silvio, declare as follows:

1.     I am a duly appointed Assistant United States Attorney for the Western District of Washington, and I have primary responsibility for representing the interests of the United States herein.

2.     I make this declaration in support of an application for a search warrant pursuant to Federal Rule of Criminal Procedure 41 and 18 U.S.C. § 2703(c)(1)(A) with an integrated pen-trap order pursuant to 18 U.S.C. §§ 3122 and 3123.

3.     Pursuant to 18 U.S.C. § 3122(b), I certify that Homeland Security Investigations is the law enforcement agency conducting the investigation in this matter and that the information likely to be obtained from the requested warrant is relevant to an ongoing criminal investigation being conducted by that agency.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing Application is made on the basis of information officially furnished, and on that basis I verily believe such information to be true.

Executed this 6th day of April, 2022.


/s/ Joseph C. Silvio
JOSEPH C. SILVIO
Assistant United States Attorney

Exhibit 1: Declaration - 1
USAO 2018R00962

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

**ATTACHMENT A1**

**Property to Be Searched and Subscriber/Subject Information**

1.     Records and information associated with the cellular phone assigned call number:

     a.     (916) 616-2319 (hereinafter "**Target Telephone 1**" or "**TT1**"). **TT1** is a cellular telephone with International Mobile Subscriber Identity (IMSI) 311480380560254, with subscriber "Info Update," at 295 Parkshore Drive, Folsom, CA, with service provided by Verizon, a wireless telephone service provider headquartered at 180 Washington Valley Road, Bedminster, NJ 07921.

The subscriber/customer of the Target Cell Phone is unknown. The identity of the person who is the subject of the criminal investigation is Jaspal GILL, aka Rajinder Pal SINGH.

     b.     (360) 303-0806 (hereinafter "**Target Telephone 2**" or "**TT2**"). **TT2** is a cellular telephone with International Mobile Subscriber Identity (IMSI) 311480414153925, with subscriber "PHONEINTHEBOX OAS," at 295 Parkshore Drive, Folsom, CA with service provided by Verizon, a wireless telephone service provider headquartered at 180 Washington Valley Road, Bedminster, NJ 07921.

The subscriber/customer of the Target Cell Phone is unknown. The identity of the person who is the subject of the criminal investigation is Jaspal GILL, aka Rajinder Pal SINGH.

2.     The Target Cell Phones (**TT1 and TT2**).

3.     The property to be searched includes: (i) any instrument to which the listed target telephone number was assigned within the last 30 days, and that now has been assigned a changed telephone number, (ii) any changed telephone number assigned to an instrument now bearing the same unique identifying number (such as an IMSI, ESN, MSID, or IMEI) as the telephone number listed above, or that was bearing the same unique identifying number as the telephone number listed above, at any point within the last 30 days, (iii) any changed unique identifying number subsequently assigned to the same telephone number, or (iv) any additional changed telephone number and/or unique

identifying number, whether the changes occur consecutively or simultaneously, listed to the same subscriber and wireless telephone account number as the telephone numbers listed above, within the period of disclosure authorized by this warrant.

Attachment A1 - 2
USAO 2018R00962

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

**ATTACHMENT B1**

**Particular Things to be Seized**

This warrant is issued pursuant to Rule 41 of the Federal Rules of Criminal Procedure, the Electronic Communications Privacy Act (ECPA), 18 U.S.C. §§ 2701-2713, and the Pen Register Act, 18 U.S.C. §§ 3121-3127. As such, this warrant authorizes the collection of subscriber records, pen-trap data, cell site data, and prospective E-911/GPS and cell site triangulation information regarding the Target Cell Phones. **This warrant does not authorize the disclosure or seizure of any tangible property or the content of any wire or electronic communication, as defined in 18 U.S.C. § 2510(8).** Accordingly, the Court finds reasonable necessity for the seizure of the data and records identified below. *See* 18 U.S.C. § 3103a(b)(2).

**I.     Section I: Information to be Disclosed by Verizon**

1.     **Subscriber/Account Information.** The following non-content information about the customers or subscribers associated with the Account listed in Attachment A1:

a.     Names (including subscriber names, user names, and screen names);

b.     Addresses (including mailing addresses, residential addresses, business addresses, and e-mail addresses);

c.     Local and long distance telephone connection records from **March 1, 2021, through April 6, 2022**;

d.     Records of session times and durations, and the temporarily assigned network addresses (such as Internet Protocol (IP) addresses) associated with those sessions from **March 1, 2021, through April 6, 2022**;

e.     Length of service (including start date) and types of service utilized;

f.     Telephone or instrument numbers (including MAC addresses, Electronic Serial Numbers (ESN), Mobile Electronic Identity Numbers (MEIN), Mobile Equipment Identifiers (MEID), Mobile Identification Numbers (MIN), Subscriber Identity Modules (SIM), Mobile Subscriber Integrated Services Digital Network Numbers

(MSISDN), International Mobile Subscriber Identity Identifiers (IMSI), or International Mobile Equipment Identities (IMEI);

   g. Other subscriber numbers or identities (including the registration Internet Protocol (IP) address); and

   h. Means and source of payment for such service (including any credit card or bank account number) and billing records.

  2. **Pen Register/ Trap and Trace Data and Associated Subscriber Records to Be Provided for a Period of 45 Days.**

   a. Verizon shall install and monitor pen-trap devices to record, decode, and/or capture dialing, routing, addressing, and signaling information associated with each communication to or from the Target Cell Phone(s) including the date, time, and duration of the communication, and the following, without geographic limit and without notice to the subscriber:

    (i) IP addresses associated with the cell phone device or devices used to send or receive electronic communications;

    (ii) Any unique identifiers associated with the cell phone device or devices used to make and receive calls with the cell phone number described in Attachment A1, or to send or receive other electronic communications, including the ESN, MEIN, IMSI, IMEI, SIM, MSISDN, or MIN;

    (iii) IP addresses of any websites or other servers to which the cell phone device or devices connected; and

    (iv) Source and destination telephone numbers and email addresses.

   b. On a 24-hour-a-day basis, for the duration of the authorized pen-trap devices, Verizon shall provide the following records for those subscribers whose identifiers are obtained pursuant to the use of the pen-trap devices: published or non-published subscriber names and addresses, including billing addresses.

Attachment B1 - 2
USAO 2018R00962

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

3.    **Historical Cell Site Location Information**.

a.    All records and other information (**not including the contents of communications**) relating to wire and electronic communications sent or received by the Account from **March 1, 2022, through April 6, 2022**, including:

i.    the date and time of the communication, the method of the communication, and the source and destination of the communication (such as the source and destination telephone numbers (call detail records), email addresses, and IP addresses);

ii.    historical cell site information regarding the cell tower and antenna face (also known as "sectors") through which the communications were sent and received. This information is to be provided irrespective of the application, name, or report utilized by Verizon. Accordingly, this information includes the following data sets to the extent that they are collected by Verizon: RTT, PLU, PCMD, LOCDBOR, EVDO, True Call, ALULTE, and Timing Advance.

b.    The physical address and coverage maps of cell towers used by the Target Cell Phone(s).

4.    **Prospective Cell Site Location Information.**

a.    All information about the location of the Target Cell Phone(s) described in Attachment A1 for **a period of 45 days**, during all times of day and night. This information includes: precise location information, as well as all data about which "cell towers" (i.e., antenna towers covering specific geographic areas) and "sectors" (i.e., faces of the towers) received a radio signal from the cellular telephone(s) or account(s) described in Attachment A1. This information also includes the following data sets to the extent that they are collected by Verizon: RTT, PLU, PCMD, LOCDBOR, EVDO, True Call, ALULTE, and Timing Advance.

b.    The physical address and coverage maps of cell towers used by the Target Cell Phone(s).

5.    **Prospective E-911/GPS and Cell Site Triangulation Information.**

a.    All information about the location of the Target Cell Phone(s)

Attachment B1 - 3
USAO 2018R00962

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

described in Attachment A1 for **a period of 45 days**, during all times of day and night. This information includes: all available E-911 Phase II data, GPS data, latitude-longitude data, and other precise location information, as well as all data about which "cell towers" (i.e., antenna towers covering specific geographic areas) and "sectors" (i.e., faces of the towers) received a radio signal from the cellular telephone(s) or account(s) described in Attachment A1.

        b.    The physical address and coverage maps of cell towers used by the Target Cell Phone(s).

To the extent that the location information described in the previous paragraphs (hereinafter, "Location Information") is within the possession, custody, or control of Verizon, Verizon is required to disclose the Location Information to the government pursuant to this warrant. In addition, pursuant to 18 U.S.C. §§ 3123(b)(2) and 3124(a)-(b), Verizon must furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the Location Information unobtrusively and with a minimum of interference with Verizon's services. The government shall compensate Verizon for reasonable expenses incurred in furnishing such facilities or assistance.

**II.**    **Section II: Information to Be Seized by the Government**

1.    All information described above in Section I that constitutes evidence of violations of 8 U.S.C. §§ 1324(a)(1)(A)(i) and (a)(2)(B)(ii), Alien Smuggling, and 18 U.S.C. §§ 1956(a)(1), and (h), Laundering of, and Conspiracy to Launder, Monetary Instruments involving Jaspal GILL, aka, Rajinder SINGH, and/or previously unidentified subject(s).

2.    All non-content subscriber/account information provided pursuant to 18 U.S.C. § 2703(c).

3.    All non-content dialing, routing, addressing, and signaling information provided pursuant to 18 U.S.C. §§ 3121-3127.

4.    Location Information regarding the Target Cell Phone(s).

Attachment B1 - 4
USAO 2018R00962

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

Law enforcement personnel (who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, agency personnel assisting the government in this investigation, and outside technical experts under government control) are authorized to review the records produced by Verizon in order to locate the things particularly described in this Warrant.

Attachment B1 - 5
USAO 2018R00962

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

**ATTACHMENT A2**

**Property to Be Searched and Subscriber/Subject Information**

1.      Records and information associated with the cellular phone assigned call number:

a.      (916) 513-3602 (hereinafter "**Target Telephone 3**" or "**TT3**"). **TT3** is a cellular telephone with International Mobile Subscriber Identity (IMSI) 310410162223277, with subscriber "PREPAID CUSTOMER," at 17330 Preston Road in Dallas, TX, with service provided by AT&T, a wireless telephone service provider headquartered at 11760 U.S. Highway 1, North Palm Beach, FL 33408.

The subscriber/customer of the Target Cell Phone is unknown. The identity of the person who is the subject of the criminal investigation is Jaspal GILL, aka Rajinder Pal SINGH.

b.      (253) 750-1721 (hereinafter "**Target Telephone 4**" or "**TT4**"). **TT4** is a cellular telephone with International Mobile Subscriber Identity (IMSI) 310410206907647, with subscriber "PREPAID CUSTOMER," at 123 Your Street, Your Town, GA 98022, with service provided by AT&T, a wireless telephone service provider headquartered at 11760 U.S. Highway 1, North Palm Beach, FL 33408.

The subscriber/customer of the Target Cell Phone is unknown. The identity of the person who is the subject of the criminal investigation is Jaspal GILL, aka Rajinder Pal SINGH.

c.      (628) 224-5202 (hereinafter "**Target Telephone 5**" or "**TT5**"). **TT5** is a cellular telephone with International Mobile Subscriber Identity (IMSI) 310410182036323, with subscriber "PREPAID CUSTOMER," at 123 Your Street, Your Town, GA 94131, with service provided by AT&T, a wireless telephone service provider headquartered at 11760 U.S. Highway 1, North Palm Beach, FL 33408.

The subscriber/customer of the Target Cell Phone is unknown. The identity of the person who is the subject of the criminal investigation is Jaspal GILL, aka Rajinder Pal SINGH.

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1                d.        (253) 298-2097 (hereinafter "**Target Telephone 6**" or "**TT6**"). **TT6**

2  is a cellular telephone with International Mobile Subscriber Identity (IMSI)

3  310280034815193, with subscriber "PREPAID CUSTOMER," at 123 Your Street, Your

4  Town, GA 98409, with service provided by AT&T, a wireless telephone service provider

5  headquartered at 11760 U.S. Highway 1, North Palm Beach, FL 33408.

6           The subscriber/customer of the Target Cell Phone is unknown. The identity of the

7  person who is the subject of the criminal investigation is Jaspal GILL, aka Rajinder Pal

8  SINGH.

9           1.        The Target Cell Phones (**TT3-TT6**).

10           2.        The property to be searched includes: (i) any instrument to which the listed

11  target telephone number was assigned within the last 30 days, and that now has been

12  assigned a changed telephone number, (ii) any changed telephone number assigned to an

13  instrument now bearing the same unique identifying number (such as an IMSI, ESN,

14  MSID, or IMEI) as the telephone number listed above, or that was bearing the same unique

15  identifying number as the telephone number listed above, at any point within the last 30

16  days, (iii) any changed unique identifying number subsequently assigned to the same

17  telephone number, or (iv) any additional changed telephone number and/or unique

18  identifying number, whether the changes occur consecutively or simultaneously, listed to

19  the same subscriber and wireless telephone account number as the telephone numbers listed

20  above, within the period of disclosure authorized by this warrant.

21

22

23

24

25

26

27

28

Attachment A2 - 2
USAO 2018R00962

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

**ATTACHMENT B2**

**Particular Things to be Seized**

This warrant is issued pursuant to Rule 41 of the Federal Rules of Criminal Procedure, the Electronic Communications Privacy Act (ECPA), 18 U.S.C. §§ 2701-2713, and the Pen Register Act, 18 U.S.C. §§ 3121-3127. As such, this warrant authorizes the collection of subscriber records, pen-trap data, cell site data, and prospective E-911/GPS and cell site triangulation information regarding the Target Cell Phones. **This warrant does not authorize the disclosure or seizure of any tangible property or the content of any wire or electronic communication, as defined in 18 U.S.C. § 2510(8).** Accordingly, the Court finds reasonable necessity for the seizure of the data and records identified below. *See* 18 U.S.C. § 3103a(b)(2).

I.   <u>Section I</u>: Information to be Disclosed by AT&T

1.     **Subscriber/Account Information.** The following non-content information about the customers or subscribers associated with the Account listed in Attachment A2:

a.     Names (including subscriber names, user names, and screen names);

b.     Addresses (including mailing addresses, residential addresses, business addresses, and e-mail addresses);

c.     Local and long distance telephone connection records from **March 1, 2021, through April 6, 2022**;

d.     Records of session times and durations, and the temporarily assigned network addresses (such as Internet Protocol (IP) addresses) associated with those sessions from **March 1, 2021, through April 6, 2022**;

e.     Length of service (including start date) and types of service utilized;

f.     Telephone or instrument numbers (including MAC addresses, Electronic Serial Numbers (ESN), Mobile Electronic Identity Numbers (MEIN), Mobile Equipment Identifiers (MEID), Mobile Identification Numbers (MIN), Subscriber Identity Modules (SIM), Mobile Subscriber Integrated Services Digital Network Numbers

(MSISDN), International Mobile Subscriber Identity Identifiers (IMSI), or International Mobile Equipment Identities (IMEI);

g.    Other subscriber numbers or identities (including the registration Internet Protocol (IP) address); and

h.    Means and source of payment for such service (including any credit card or bank account number) and billing records.

2.    **Pen Register/ Trap and Trace Data and Associated Subscriber Records to Be Provided for a Period of 45 Days.**

a.    AT&T shall install and monitor pen-trap devices to record, decode, and/or capture dialing, routing, addressing, and signaling information associated with each communication to or from the Target Cell Phone(s) including the date, time, and duration of the communication, and the following, without geographic limit and without notice to the subscriber:

(v)    IP addresses associated with the cell phone device or devices used to send or receive electronic communications;

(vi)    Any unique identifiers associated with the cell phone device or devices used to make and receive calls with the cell phone number described in Attachment A2, or to send or receive other electronic communications, including the ESN, MEIN, IMSI, IMEI, SIM, MSISDN, or MIN;

(vii)    IP addresses of any websites or other servers to which the cell phone device or devices connected; and

(viii)    Source and destination telephone numbers and email addresses.

b.    On a 24-hour-a-day basis, for the duration of the authorized pen-trap devices, AT&T shall provide the following records for those subscribers whose identifiers are obtained pursuant to the use of the pen-trap devices: published or non-published subscriber names and addresses, including billing addresses.

Attachment B2 - 2
USAO 2018R00962

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

3.     **Historical Cell Site Location Information**.

a.     All records and other information (**not including the contents of communications**) relating to wire and electronic communications sent or received by the Account from **March 1, 2022, through April 6, 2022**, including:

i.     the date and time of the communication, the method of the communication, and the source and destination of the communication (such as the source and destination telephone numbers (call detail records), email addresses, and IP addresses);

ii.     historical cell site information regarding the cell tower and antenna face (also known as "sectors") through which the communications were sent and received. This information is to be provided irrespective of the application, name, or report utilized by AT&T. Accordingly, this information includes the following data sets to the extent that they are collected by AT&T: RTT, PLU, PCMD, LOCDBOR, EVDO, True Call, ALULTE, and Timing Advance.

b.     The physical address and coverage maps of cell towers used by the Target Cell Phone(s).

4.     **Prospective Cell Site Location Information.**

a.     All information about the location of the Target Cell Phone(s) described in Attachment A2 for **a period of 45 days**, during all times of day and night. This information includes: precise location information, as well as all data about which "cell towers" (i.e., antenna towers covering specific geographic areas) and "sectors" (i.e., faces of the towers) received a radio signal from the cellular telephone(s) or account(s) described in Attachment A2. This information also includes the following data sets to the extent that they are collected by AT&T: RTT, PLU, PCMD, LOCDBOR, EVDO, True Call, ALULTE, and Timing Advance.

b.     The physical address and coverage maps of cell towers used by the Target Cell Phone(s).

5.     **Prospective E-911/GPS and Cell Site Triangulation Information.**

a.     All information about the location of the Target Cell Phone(s)

Attachment B2 - 3
USAO 2018R00962

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

described in Attachment A2 for **a period of 45 days**, during all times of day and night. This information includes: all available E-911 Phase II data, GPS data, latitude-longitude data, and other precise location information, as well as all data about which "cell towers" (i.e., antenna towers covering specific geographic areas) and "sectors" (i.e., faces of the towers) received a radio signal from the cellular telephone(s) or account(s) described in Attachment A2.

        b.    The physical address and coverage maps of cell towers used by the Target Cell Phone(s).

To the extent that the location information described in the previous paragraphs (hereinafter, "Location Information") is within the possession, custody, or control of AT&T, AT&T is required to disclose the Location Information to the government pursuant to this warrant. In addition, pursuant to 18 U.S.C. §§ 3123(b)(2) and 3124(a)-(b), AT&T must furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the Location Information unobtrusively and with a minimum of interference with AT&T's services. The government shall compensate AT&T for reasonable expenses incurred in furnishing such facilities or assistance.

**II.**    **<u>Section</u> II: Information to Be Seized by the Government**

6.    All information described above in Section I that constitutes evidence of violations of 8 U.S.C. §§ 1324(a)(1)(A)(i) and (a)(2)(B)(ii), Alien Smuggling, and 18 U.S.C. §§ 1956(a)(1), and (h), Laundering of, and Conspiracy to Launder, Monetary Instruments involving Jaspal GILL, aka, Rajinder SINGH, and/or previously unidentified subject(s).

7.    All non-content subscriber/account information provided pursuant to 18 U.S.C. § 2703(c).

8.    All non-content dialing, routing, addressing, and signaling information provided pursuant to 18 U.S.C. §§ 3121-3127.

9.    Location Information regarding the Target Cell Phone(s).

Attachment B2 - 4
USAO 2018R00962

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1
2
3
4
5

Law enforcement personnel (who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, agency personnel assisting the government in this investigation, and outside technical experts under government control) are authorized to review the records produced by AT&T in order to locate the things particularly described in this Warrant.

6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970